# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF NEW YORK

# BINGHAMTON DIVISION

|  |  |
|---|---|
| DAVID POTTER, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TIOGA DOWNS RACETRACK, LLC,<br><br>Defendant. | Civil Action No.:   3:22-cv-869 (TJM/ML)<br><br>Electronically filed on August 23, 2022<br><br>**COMPLAINT AND JURY DEMAND** |

## NATURE OF THE ACTION

1.    Plaintiff David Potter ("Plaintiff"), by and through his attorney, brings this proposed class action against Defendant Tioga Downs Racetrack, LLC ("TD") pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and multiple provisions of the New York Labor Law ("N.Y.L.L."), arising from TD's misclassification of Plaintiff and other casino dealers (collectively, "Class Members") as employees covered by New York's Hospitality Industry Wage Order ("HIWO") rather than New York's Miscellaneous Wage Order ("MWO"). As a result of this misclassification, Class Members have been paid sub-minimum wage for regular hours worked and have been improperly paid for overtime hours worked.

2.    Plaintiff, on behalf of himself and the proposed collective and class, seeks damages for unpaid overtime pay (29 U.S.C. §§ 207 and 216(b); 12 NYCCR § 142), unpaid minimum wage (12 NYCCR § 142, N.Y.L.L. § 650, *et seq.*), liquidated damages (29 U.S.C.

§ 216(b), N.Y.L.L. §§ 198(1-a) and 663), as well as attendant penalties for inaccurate wage notices (N.Y.L.L. §§ 195(1) and 198(1-b)) and inaccurate wage statements (N.Y.L.L. §§ 195(3) and 198(1-d)).

## PARTIES

3.      TD is a New York company in the business of, *inter alia*, owning, operating, and managing a racetrack, casino, and hotel in Nichols, New York, where TD is headquartered.

4.      Plaintiff is a citizen of New York, residing in Broome County. TD has employed Plaintiff as a dealer from approximately October 2016 until the present. Plaintiff is a member of both the putative Collective and putative Class as defined herein. Plaintiff's Notice of Consent to Join this collective action pursuant to 29 U.S.C. § 216(b) has been filed contemporaneously with this Complaint.

## JURISDICTION

5.      This Court has federal question subject matter jurisdiction of this case pursuant to 28 U.S.C. § 1331 because this action is brought pursuant to the FLSA, 29 U.S.C. § 201, *et seq*.

6.      This Court has supplemental jurisdiction over N.Y.L.L. claims pursuant to 28 U.S.C. § 1367 because the N.Y.L.L. claims are so related to the FLSA claim such that they form part of the same case or controversy under Article III of the United States Constitution.

## VENUE

7.      This Court is the proper venue for this matter pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is headquartered in this District and has substantial and systematic contacts in this District.

## SUBSTANTIVE ALLEGATIONS

8.      Class Members, as defined herein, are individuals who have been employed by TD as dealers in TD's casino during the relevant time period.

9.      During all relevant times until on or around June 30, 2020, TD classified Class Members as employees covered by the minimum wage and tip credit requirements set forth by the MWO. On or around June 30, 2020, while Class Members were furloughed due to the Covid-19 pandemic, and without notice, TD reclassified Class Members as employees covered by the HIWO.[1]

10.     On information and belief, TD reclassified Class Members not because of any good faith and/or reasonable belief that Class Members were properly subject to the HIWO, but rather because of the increasing minimum wage and corresponding phase-out of the tip credit in the MWO. Until June 30, 2020, TD was obligated to pay Class Members less under the MWO than it would have been obligated to pay Class Members had it classified them under the HIWO. But on June 30, 2020, the tip credit under the HIWO was halved from $2.90 to $1.45, and at that point TD's obligation to pay Class Members pursuant to the MWO would have exceeded TD's obligation to pay Class Members under the HIWO. Thus, on information and belief, TD reclassified Class Members to obtain a financial benefit, regardless of Class Members' appropriate Wage Order classification. TD's financial benefit arising from reclassifying Class Members under the HIWO increased further on December 31, 2020, when the Labor Commissioner eliminated the tip credit in the MWO entirely, and at which time the minimum wage and corresponding tip credit in the HIWO increased. TD's financial benefit arising from reclassifying Class Members under the HIWO again increased on December 31, 2021, when the minimum wage and corresponding tip credit in the HIWO again increased. On information and belief, TD knew of and anticipated the above-described financial benefits

---

[1]     Plaintiff is informed and believes that the reclassification took place on or around June 30, 2020. However, because Plaintiff and his coworkers were furloughed at the time and did not return to work until on or around October 2020, it is possible that the reclassification did not occur until some later date, but in any case, before their return to work.

and reclassified Class Members to obtain such financial benefits; indeed, TD's reclassification has cost the named Plaintiff alone thousands of dollars over the course of the last approximately two years.

11.     The MWO applies to all New York employees not covered by a different Wage Order. *See* 12 NYCCR § 142-1.

12.     The HIWO applies only to "employees" of employers in the "hospitality industry," both of which terms are defined by the HIWO. "Employees" are defined as "any individual suffered or permitted to work in the hospitality industry." 12 NYCCR § 146-3.2(a). The "hospitality industry" includes "hotels," which are defined, in relevant part, as "any establishment which as a whole or part of its business activities offers lodging accommodations for hire to the public, to employees, or to members or guests of members, and services in connection therewith or incidental thereto. The industry includes but is not limited to commercial hotels, apartment hotels, resort hotels, lodging houses, boarding houses, all-year hotels, furnished room houses, children's camps, adult camps, tourist camps, tourist homes, auto camps, motels, residence clubs, membership clubs, dude ranches, and spas and baths that provide lodging."

13.     Class Members are not "employees" in the "hospitality industry" because they work in an "establishment" – TD's casino – which does not and has never offered lodging accommodations, and which is distinct – physically and functionally – from TD's hotel. *See* 29 C.F.R. § 1620.9 (FLSA regulation discussing multiple "establishments" under same overarching business enterprise); *see also* 29 C.F.R. § 779.305 (same); *see also Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 360 (E.D.N.Y. 2015) ("courts in the Second Circuit have generally applied their analysis of a plaintiff's FLSA claim to a plaintiff's NYLL claim due to the substantial similarity in the provisions.").

14.    While TD's casino and hotel are attached in the sense that one does not have to walk outside or leave the property to go from the casino to the hotel or vice versa, they are at opposite ends of the property's overall physical layout, separated by a large foyer, hallways, restaurants, banquet rooms, and elevators. Indeed, while the casino opened in 2006, the hotel was not built or opened until 2017. Patrons who have no business with the hotel component of the property are not logistically or otherwise obligated to set foot in the hotel area – they can simply walk into the property's main entrance and turn left into the casino, or access the casino through an entrance near the buffet; the main entrance was the primary entrance for the casino before the hotel was built in 2017. Conversely, a patron that wishes to access the hotel from the main entrance (or from the casino) must take an elevator, walk through several hallways, and pass multiple banquet rooms and restaurants. Moreover, the hotel has its own entrance and parking lot for patrons who stay overnight and who wish to first put their luggage in their rooms.

15.    Additionally, Class Members do not perform any of their regular work duties in the hotel, and hotel employees do not perform any of their regular work duties in the casino. Tellingly, since the onset of Covid, the property has been short-staffed, and TD has recruited dealers to work in the hotel; however, such employees are required to clock out from their dealer jobs and clock back in for their hotel jobs, and they receive different pay and are required to wear different uniforms for the respective jobs.

16.    Further, as noted above, Tioga Downs operated for many years as a casino and/or "racino" without a hotel. The fact that TD added a hotel to the property on which the casino had operated did not magically transform casino employees to workers in the hospitality industry, just as annexing a hotel to the courthouse would not convert court staff to employees working in the hospitality industry. *See Biasi v. Wal-Mart Stores E., LP*, No.

615CV0454GTSATB, 2017 WL 1082448, at *15 (N.D.N.Y. Mar. 22, 2017) (discussing the HIWO's objective in differentiating establishments that fall under its regulations from those that do not) (citing *S.E.C. v. Rosenthal*, 650 F.3d 156, 162 (2d Cir. 2011) (stating that "it is ... well-established that a statute should be interpreted in a way that avoids absurd results") (internal quotation marks and alterations omitted)); also citing *Orozco v. Fresh Direct, LLC*, 2016 WL 5416510, at *4 (S.D.N.Y. Sept. 27, 2016) (stating that the "Hospitality Industry Wage Order is clearly directed specifically to the hospitality industry" and noting that "[n]ot all service employment is the same ... a law directed at restaurants and hotels (service providers specifically defined by the Hospitality Wager Order) cannot automatically be expanded to regulate every other service industry")).

17.     Conversely, TD employees who work in the property's hotel – who are not part of the proposed class – *do* work in the "hospitality industry," and specifically, a "hotel," because they work in an "establishment" that offers lodging accommodations, as well as services in connection therewith or incidental thereto.

18.     For the foregoing reasons, and any additional reasons that may be learned in discovery, the hotel and casino should be considered different "establishments" under the HIWO, and Class Members should be classified and compensated pursuant to the MWO, not the HIWO.

19.     As a result of TD's misclassification of Class Members, Class Members have not been paid full overtime compensation under New York law or as required by the FLSA, even though they have worked more than 40 hours per workweek during the relevant time period.

20.     As a result of TD's misclassification of Class Members, Class Members have been paid less than New York's minimum wage.

21.    As a result of TD's misclassification of Class Members, Class Members' wage statements have not accurately reflected their regular and overtime rates of pay as required by New York law.

22.    As a result of TD's misclassification of Class Members, Class Members' wage notices have not accurately set forth their rates of pay and basis thereof and/or their regular hourly rates and overtime rates of pay.

## COLLECTIVE ACTION ALLEGATIONS

23.    Plaintiff's claim for overtime damages and liquidated damages under the FLSA is brought on behalf of himself and all others similarly situated ("Collective Members"). This putative collective is defined as:

> "All current and former individuals employed by TD dealers from June 30, 2020, to the final disposition of this action."

24.    Plaintiff and Collective Members are similarly situated pursuant to 29 U.S.C. § 216(b) because each of them was subject to TD's company-wide practice of improperly classifying them under the HIWO and resulting failure to pay full overtime compensation owed to Collective Members for hours worked in excess of 40 per week.

## CLASS ACTION ALLEGATIONS

25.    Plaintiff's claims for minimum wage damages, overtime damages, wage statement penalties, and wage notice penalties under the N.Y.L.L. are brought on behalf of himself and all others similarly situated ("Class Members"). This putative class is defined as:

> "All current and former individuals employed by TD as casino dealers from June 30, 2020 to the final disposition of this action."

## A.    ASCERTAINABILITY

26.    Plaintiff is informed and believes that the identities of Class Members are ascertainable through TD's personnel records.

**B.    NUMEROSITY**

27.    Plaintiff is informed and believes that there are hundreds of Class Members, and that it would be impracticable to bring them all before the Court.

**C.    COMMONALITY**

28.    Questions of law and fact common to Class Members include, for example:

- Whether TD has improperly classified Class Members under the HIWO;

    o    If so, whether Class Members have been properly paid New York minimum wage for all hours worked;

    o    If so, whether Class Members have been properly paid under New York overtime laws for all overtime hours worked;

- If Class Members have not been properly paid under New York overtime or minimum wage laws, whether Class Members' wage statements have been inaccurate;

- If Class Members have not been properly paid under New York overtime or minimum wage laws, whether Class Members' wage notices have accurately set forth their rates of pay and basis thereof and/or their regular hourly rates and overtime rates of pay.

29.    Issues common to the class can be resolved with class-wide evidence, including evidence that TD's misclassification applied to all Class Members, and evidence that this misclassification resulted in (1) systematic minimum wage and overtime violations; (2) Class Members receiving inaccurate wage statements during every pay period during the relevant time period; and (3) Class Members receiving inaccurate wage notices.

**D.    TYPICALITY**

30.    Plaintiff's claims are typical, if not identical, to the claims that could be asserted by

8

all Class Members, as Plaintiff's claims arise from TD's misclassification of Class Members and attendant minimum wage, overtime, wage statement, and wage notice violations applicable to all Class Members as described herein.

**E.    ADEQUACY**

31.    Plaintiff will adequately represent the interests of Class Members because there are no conflicts between Plaintiff and any Class Members and because Plaintiff's counsel has the experience and skill to zealously advocate for the interests of Class Members.

**F.    PREDOMINANCE**

32.    Common issues predominate over individualized inquiries in this action because TD's liability for minimum wage overtime, wage statement, and wage notice violations arising from its misclassification of Class Members can be established as to all Class Members with classwide evidence as discussed above.

**G.    SUPERIORITY**

33.    There are substantial benefits to proceeding as a class action that render proceeding as a class superior to any alternatives, including the fact that it will provide a realistic means for Class Members to recover damages and penalties; it would be substantially less burdensome on the courts and the parties than numerous individual proceedings; many Class Members may be unaware that they have legal recourse for the conduct alleged herein; and because issues common to Class Members can be effectively managed in a single proceeding.

**FIRST CLAIM**
**FAILURE TO PAY OVERTIME**
**29 U.S.C. § 207**
**(On Behalf of all Collective Members)**

34.    Plaintiff, on behalf of himself and all Collective Members, realleges and incorporates by reference the allegations in the preceding paragraphs as if fully alleged herein.

35.    The FLSA states that an employee must be paid wages equal to one and one-half

(1.5) times the employee's regular rate of pay for all hours worked in excess of 40 per week.

36.     Collective Members, including Plaintiff, have worked in excess of forty (40) hours per week on a regular basis but as a result of their misclassification under the HIWO have not been paid the full amount of overtime premium pay owed for hours worked in excess of forty (40) per week.

37.     Accordingly, Collective Members are entitled to damages for TD's failure to pay overtime wages in violation of the FLSA.

38.     Further, as described herein, TD's actions were not in good faith, nor did TD have reasonable grounds for believing its actions were not in violation of the FLSA. Accordingly, Collective Members are entitled to liquidated damages pursuant to 29 U.S.C. § 216.

**SECOND CLAIM**
**FAILURE TO PAY OVERTIME**
**12 NYCCR § 142, N.Y.L.L. § 650, *et seq.*, N.Y.L.L. § 198(1-a)**
**(On Behalf of all Class Members)**

39.     Plaintiff, on behalf of himself and all Class Members, realleges and incorporates by reference the allegations in the preceding paragraphs as if fully alleged herein.

40.     The Minimum Wage Act, N.Y.L.L. § 650, *et seq.*, and specifically N.Y.L.L. §§ 655-656, delegated authority to the New York State Commissioner of Labor to issues regulations governing not just minimum wage, but also overtime pay. Pursuant to this authority, the Commissioner promulgated 12 NYCCR § 142 which states, in relevant part, that an employee must be paid wages equal to one and one-half (1.5) times the employee's regular rate of pay for all hours worked in excess of 40 per week. N.Y.L.L. § 663 provides that employees may bring a civil action for any underpayment of wages, including overtime wages, to which he or she is entitled under the Minimum Wage Act and attendant regulations, including 12 NYCCR § 142. Similarly, N.Y.L.L. § 198(1-a) provides that employees may recover the full amount of any underpayment of wages in a court action. Further, pursuant to N.Y.L.L. § 663, any agreement

between the employee, and the employer to work for less than such wage shall be no defense to such action.

41.    Class Members, including Plaintiff, have worked in excess of forty (40) hours per week on a regular basis but as a result of their misclassification under the HIWO have not been paid the full amount of premium pay owed for hours worked in excess of 40 in a week pursuant to the MWO and N.Y.L.L.

42.    Accordingly, Class Members are entitled to damages for TD's failure to pay overtime wages in violation of New York law.

43.    Further, as described herein, TD's actions have not been in good faith. Accordingly, Class Members are entitled to liquidated damages pursuant to N.Y.L.L. §§ 663(1) and/or 198(1-a).

**THIRD CLAIM**
**FAILURE TO PAY MINIMUM WAGE**
**12 NYCCR § 142, N.Y.L.L. § 650, *et seq.*, N.Y.L.L. § 198(1-a)**
**(On Behalf of all Class Members)**

44.    Plaintiff, on behalf of himself and all Class Members, realleges and incorporates by reference the allegations in the preceding paragraphs as if fully alleged herein.

45.    Pursuant to 12 NYCCR § 142-3.1 and N.Y.L.L. § 652(1)(c), employees covered by the MWO have been entitled to $12.50 per hour between December 31, 2020 and December 30, 2021, and $13.20 per hour after December 30, 2021.

46.    The Minimum Wage Act, N.Y.L.L. § 650, *et seq.*, and specifically N.Y.L.L. § 655-656, delegated authority to the New York State Commissioner of Labor to issues regulations governing minimum wage. Pursuant to this authority, the Commissioner promulgated 12 NYCCR § 142 which states, in relevant part, that an employee must be paid a minimum wage for all hours worked. N.Y.L.L. § 663 provides that employees may bring a civil action for any underpayment of wages, including minimum, to which he or she is entitled under the Minimum Wage Act and

attendant regulations, including 12 NYCCR § 142. Similarly, N.Y.L.L. § 198(1-a) provides that employees may recover the full amount of any underpayment of wages in a court action.  Further, pursuant to N.Y.L.L. § 663, any agreement between the employee, and the employer to work for less than such wage shall be no defense to such action.

47.    As a result of their misclassification under the HIWO, Class Members have received less than New York minimum wage for each of their hours worked since June 30, 2020.

48.    Accordingly, Class Members are entitled to damages for TD's failure to pay overtime wages in violation of New York law.

49.    Further, as described herein, TD's actions concerning payment of minimum wage have not been in good faith. Accordingly, Class Members are entitled to liquidated damages pursuant to N.Y.L.L. §§ 663(1) and/or 198(1-a).

**FOURTH CLAIM**
**FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS**
**NY LABOR § 195(3)**
**(On Behalf of all Class Members)**

50.    Plaintiff, on behalf of himself and all Class Members, realleges and incorporates by reference the allegations in the preceding paragraphs as if fully alleged herein.

51.    N.Y.L.L. § 195(3) provides that "[f]or all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay;  the overtime rate or rates of pay;  the number of regular hours worked, and the number of overtime hours worked."

52.    By misclassifying Class Members under the HIWO, TD's wage statements have necessarily inaccurately reflected Class Members' regular and overtime rates of pay.

53.    Accordingly, TD is subject to penalties pursuant to N.Y.L.L. § 198(1-d), which provides for recovery in a civil action of fifty dollars for each workday that the wage statement

12

violations occurred, not to exceed a total of five thousand dollars.

## FIFTH CLAIM
## FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS
## NY LABOR § 195(3)
## (On Behalf of all Class Members)

54.     Plaintiff, on behalf of himself and all Class Members, realleges and incorporates by reference the allegations in the preceding paragraphs as if fully alleged herein.

55.     N.Y.L.L. § 195(1) requires every employer to provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary. Each time the employer provides such notice to an employee, the employer shall obtain from the employee a signed and dated written acknowledgement, in English and in the primary language of the employee, of receipt of this notice, which the employer shall preserve and maintain for six years. Such acknowledgement shall include an affirmation by the employee that the employee accurately identified his or her primary language to the employer, and that the notice provided by the employer to such employee pursuant to this subdivision was in the language so identified or otherwise complied with paragraph (c) of this subdivision, and shall conform to any additional requirements established by the commissioner with regard to content and form. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum

wage orders or otherwise provided by New York state law or regulation, the notice must state the regular hourly rate and overtime rate of pay.

56.     By misclassifying Class Members under the HIWO, TD has necessarily provided wage notices to Class Members that have not shown, for example, Class Members' appropriate regular and overtime rates of pay.

57.     Accordingly, Intandem is subject to penalties pursuant to N.Y.L.L. § 198(1-b), which provides for recovery in a civil action of fifty dollars for each workday that the wage statement violations occurred, not to exceed a total of five thousand dollars.

## PRAYER FOR RELIEF

Plaintiff prays for relief as follows:

a.     Certification of this action as a collective and class action;

b.     Designation of Plaintiff as representative of the putative Collective and Class;

c.     Designation of Plaintiff's counsel as counsel for the putative Collective and Class;

d.     Damages for failure to pay overtime wages to Collective Members and Class Members pursuant to 29 U.S.C. § 216(b) and 12 NYCCR § 142, N.Y.L.L. §§ 198(3) and 663(1);

e.     Liquidated damages for failure to pay overtime wages to Collective Members and Class Members as provided by 29 U.S.C. § 216(b) and N.Y.L.L. §§ 663(1) and/or 198(1-a);

f.     Penalties for failure to provide accurate wage statements to be paid to Class Members pursuant to N.Y.L.L. § 198(1-d);

g.     Attorneys' fees pursuant to 29 U.S.C. § 216(b), N.Y.L.L. §§ 663(1) and/or 198(1-a), and N.Y.L.L. 198(1-d);

h.     Costs of litigation pursuant to 29 U.S.C. § 216(b), N.Y.L.L. §§ 663(1) and/or 198(1-a), and N.Y.L.L. 198(1-d);

        i.       Pre-judgment interest pursuant to federal law, if applicable, and N.Y.L.L. §§ 663(1) and/or 198(1-a);

        j.       Post-judgment interest pursuant to 28 U.S.C. § 1961(a) and NY CLPLR § 5001, *et seq.*;

        k.       Injunctive relief;

        l.       Declaratory relief; and

        m.       Any other relief the Court deems proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby respectfully demands a trial by jury in this matter.

Respectfully submitted,


Matthew D. Carlson
(State Bar No. 5802681)
LAW OFFICE OF MATTHEW D.
  CARLSON
3959 N. Buffalo Road, Suite 29
Orchard Park, NY 14127
Telephone: (716) 242-1234
mdcarlson@mdcarlsonlaw.com

Attorney for Plaintiff


Dated:  August 23, 2022