# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF NEW YORK

# BINGHAMTON DIVISION

|  |  |
|---|---|
| DAVID POTTER, on behalf of himself and others similarly situated,<br><br>                              Plaintiff,<br><br>            v.<br><br>TIOGA DOWNS RACETRACK, LLC,<br><br>                              Defendant. | Civil Action No.: 3:22-cv-00869-TJM-ML<br><br>Case filed: August 23, 2022<br><br>**SECOND AMENDED COMPLAINT AND JURY DEMAND**<br><br>**CLASS ACTION** |

## NATURE OF THE ACTION

1.      Plaintiff David Potter ("Plaintiff"), by and through his attorney, brings this proposed collective and class action against Defendant Tioga Downs Racetrack, LLC ("TD") pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and multiple provisions of the New York Labor Law ("N.Y.L.L.") on behalf of himself and other TD casino dealers (collectively, "Collective Members," "Class Members," and/or "Sub-Class Members," as appropriate).

2.      While Collective and Class Members were furloughed during the early months of the Covid-19 pandemic, TD surreptitiously and improperly reclassified them from employees covered by New York's Miscellaneous Wage Order ("MWO") to employees covered by New York's Hospitality Industry Wage Order ("HIWO"). This reclassification and misclassification allowed TD to apply a "tip credit" to its minimum wage and overtime

1

obligations under federal and state law and has therefore saved the company significant money during relevant time period. As a result of the misclassification, and as described in further detail herein, Collective and Class Members have been paid sub-minimum wage for regular hours worked in violation of state law, have been improperly paid for overtime hours worked in violation of federal and state law, have received improper wage statements in violation of state law, and did not receive wage notices describing their changed pay structure in violation of state law.

3.     Moreover, even if the reclassification was proper, TD failed to notify Collective and Class Members of TD's intent to utilize the tip credit, which notice is expressly required under federal and state law. TD's lack of notice precluded it from invoking the tip credit under federal or state law, resulting in minimum wage, overtime, wage statement, and wage notice violations, as described in further detail herein.

4.     Further, even if reclassification was proper, and even if TD properly notified Collective and Class Members of TD's intent to utilize the tip credit under federal and state law, TD nonetheless failed to properly calculate Collective, Class, and Sub-Class Members' overtime rates of pay under federal and state law and failed to provide them with proper wage statements, as described in further detail herein.

5.     Accordingly, Plaintiff, on behalf of himself and the proposed collective and classes, seeks damages for unpaid overtime pay and unpaid minimum wage, liquidated damages, penalties for inadequate wage statements and wage statements, attorneys' fees, costs, interest, and any other relief deemed proper by the Court.

## PARTIES

6.     TD is a New York company in the business of, *inter alia*, owning, operating, and managing a racetrack, casino, and hotel in Nichols, New York, where TD is headquartered.

2

7.      Plaintiff is a citizen of New York, residing in Broome County. TD employed Plaintiff as a dealer from approximately October 2016 until September 10, 2022. Plaintiff is a member of both the putative Collective and putative Class and Sub-Class as defined herein. Plaintiff's Notice of Consent to Join this collective action pursuant to 29 U.S.C. § 216(b) was filed contemporaneously with Plaintiff's Original Complaint (Dkt. No. 1-1).

## JURISDICTION

8.      This Court has federal question subject matter jurisdiction of this case pursuant to 28 U.S.C. § 1331 because this action is brought pursuant to the FLSA, 29 U.S.C. § 201, *et seq*.

9.      This Court has supplemental jurisdiction over N.Y.L.L. claims pursuant to 28 U.S.C. § 1367 because the N.Y.L.L. claims are so related to the FLSA claim such that they form part of the same case or controversy under Article III of the United States Constitution.

## VENUE

10.      This Court is the proper venue for this matter pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is headquartered in this District and has substantial and systematic contacts in this District.

## SUBSTANTIVE ALLEGATIONS

11.      Collective, Class, and Sub-Class Members, as defined herein, are individuals who have been employed by TD as dealers in TD's casino during the relevant time period(s).

12.      During all relevant times until on or around June 30, 2020, TD classified Collective and Class Members as employees covered by the minimum wage and tip credit requirements set forth by the MWO. On or around June 30, 2020, while Collective and Class

Members were furloughed due to the Covid-19 pandemic, and without notice, TD reclassified Collective and Class Members as employees covered by the HIWO.[1]

13.    On information and belief, TD reclassified Collective and Class Members not because of any good faith and/or reasonable belief that Collective and Class Members were properly subject to the HIWO, but rather because of the increasing minimum wage and corresponding phase-out of the tip credit in the MWO. Until June 30, 2020, TD was obligated to pay Collective and Class Members less under the MWO than it would have been obligated to pay Collective and Class Members had it classified them under the HIWO. But on June 30, 2020, the tip credit under the HIWO was halved from $2.90 to $1.45, and at that point TD's obligation to pay Collective and Class Members pursuant to the MWO would have exceeded TD's obligation to pay Collective and Class Members under the HIWO. Thus, on information and belief, TD reclassified Collective and Class Members to obtain a financial benefit, regardless of Collective and Class Members' appropriate Wage Order classification. TD's financial benefit arising from reclassifying Collective and Class Members under the HIWO increased further on December 31, 2020, when the Labor Commissioner eliminated the tip credit in the MWO entirely, and at which time the minimum wage and corresponding tip credit in the HIWO increased. TD's financial benefit arising from reclassifying Collective and Class Members under the HIWO again increased on December 31, 2021, when the minimum wage and corresponding tip credit in the HIWO again increased. On information and belief, TD knew of and anticipated the above-described financial benefits and reclassified Collective and Class Members to obtain such financial benefits; indeed, TD's reclassification has so far saved

---

[1]    Plaintiff is informed and believes that the reclassification took place on or around June 30, 2020. However, because Plaintiff and his coworkers were furloughed at the time and did not return to work until on or around October 2020, it is possible that the reclassification did not occur until some later date, but in any case, before their return to work.

it from paying the named Plaintiff alone thousands of dollars over the course of the last approximately two years.

14.     The MWO applies to all New York employees not covered by a different Wage Order. *See* 12 NYCCR § 142-1.

15.     The HIWO applies only to "employees" of employers in the "hospitality industry," both of which terms are defined by the HIWO. "Employees" are defined as "any individual suffered or permitted to work in the hospitality industry." 12 NYCCR § 146-3.2(a). The "hospitality industry" includes "hotels," which are defined, in relevant part, as "any establishment which as a whole or part of its business activities offers lodging accommodations for hire to the public, to employees, or to members or guests of members, and services in connection therewith or incidental thereto. The industry includes but is not limited to commercial hotels, apartment hotels, resort hotels, lodging houses, boarding houses, all-year hotels, furnished room houses, children's camps, adult camps, tourist camps, tourist homes, auto camps, motels, residence clubs, membership clubs, dude ranches, and spas and baths that provide lodging."

16.     Collective and Class Members are not "employees" in the "hospitality industry" because they work in an "establishment" – TD's casino – which does not and has never offered lodging accommodations, and which is distinct – physically and functionally – from TD's hotel. *See* 29 C.F.R. § 1620.9 (FLSA regulation discussing multiple "establishments" under same overarching business enterprise); *see also* 29 C.F.R. § 779.305 (same); *see also Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 360 (E.D.N.Y. 2015) ("courts in the Second Circuit have generally applied their analysis of a plaintiff's FLSA claim to a plaintiff's NYLL claim due to the substantial similarity in the provisions.").

17.     While TD's casino and hotel are attached in the sense that one does not have to walk outside or leave the property to go from the casino to the hotel or vice versa, they are at opposite ends of the property's overall physical layout, separated by a large foyer, hallways, restaurants, banquet rooms, and elevators. Indeed, while the casino opened in 2006, the hotel was not built or opened until 2017. Patrons who have no business with the hotel component of the property are not logistically or otherwise obligated to set foot in the hotel area – they can simply walk into the property's main entrance and turn left into the casino, or access the casino through an entrance near the buffet; the main entrance was the primary entrance for the casino before the hotel was built in 2017. Conversely, a patron that wishes to access the hotel from the main entrance (or from the casino) must take an elevator, walk through several hallways, and pass multiple banquet rooms and restaurants. Moreover, the hotel has its own entrance and parking lot for patrons who stay overnight and who wish to first put their luggage in their rooms.

18.     Additionally, Collective and Class Members do not perform any of their regular work duties in the hotel, and hotel employees do not perform any of their regular work duties in the casino. Tellingly, since the onset of Covid, the property has been short-staffed, and TD has recruited dealers to work in the hotel; however, such employees are required to clock out from their dealer jobs and clock back in for their hotel jobs, and they receive different pay and are required to wear different uniforms for the respective jobs.

19.     Further, as noted above, TD operated for many years as a casino and/or "racino" without a hotel. The fact that TD added a hotel to the property on which the casino had operated did not magically transform casino employees to workers in the hospitality industry, just as annexing a hotel to the courthouse would not convert court staff to employees working in the hospitality industry. *See Biasi v. Wal-Mart Stores E., LP*, No. 615CV0454GTSATB,

2017 WL 1082448, at *15 (N.D.N.Y. Mar. 22, 2017) (discussing the HIWO's objective in differentiating establishments that fall under its regulations from those that do not) (citing *S.E.C. v. Rosenthal*, 650 F.3d 156, 162 (2d Cir. 2011) (stating that "it is ... well-established that a statute should be interpreted in a way that avoids absurd results") (internal quotation marks and alterations omitted)); also citing *Orozco v. Fresh Direct, LLC*, 2016 WL 5416510, at *4 (S.D.N.Y. Sept. 27, 2016) (stating that the "Hospitality Industry Wage Order is clearly directed specifically to the hospitality industry" and noting that "[n]ot all service employment is the same ... a law directed at restaurants and hotels (service providers specifically defined by the Hospitality Wager Order) cannot automatically be expanded to regulate every other service industry")).

20.    Conversely, TD employees who work in the property's hotel – who are not part of the proposed collective or class – *do* work in the "hospitality industry," and specifically, a "hotel," because they work in an "establishment" that offers lodging accommodations, as well as services in connection therewith or incidental thereto.

21.    For the foregoing reasons, and any additional reasons that may be learned in discovery, the hotel and casino should be considered different "establishments" under the HIWO, and Collective and Class Members should be classified and compensated pursuant to the MWO, not the HIWO.

22.    Because Collective and Class Members should not have been classified under the HIWO, TD has improperly applied the HIWO's tip credit to their wages. For example, in April 2022, Plaintiff was paid $11.00 per regular hour pursuant to the HIWO cash rate when he should have been paid $13.20 per regular hour (minimum wage) pursuant to the MWO rate. *See* **Exhibit A**. This type of underpayment has applied similarly to all Collective and

Class Members during the relevant time period and has resulted in all Collective and Class Members receiving less than the New York minimum wage during the relevant time period.

23.    Further, because Collective and Class Members have been improperly paid at the HIWO cash rate instead of the MWO cash rate, TD has improperly calculated their overtime rates of pay based on the HIWO cash rate. For example, Plaintiff's overtime rate of pay in April 2022 as calculated by TD under the HIWO was $16.50 ($11.00 x 1.5),[2] rather than the $19.80 rate ($13.20 x 1.5) required by the MWO. *See* Exh. A. Thus, Collective and Class Members have been systematically undercompensated for their overtime hours worked.

24.    Additionally, because Collective and Class Members have been improperly paid at the HIWO cash rate instead of the MWO cash rate, TD's wage statements have been inaccurate because, for example, they do not accurately identify Class Members' proper rates of pay.

25.    Moreover, upon reclassification, Collective and Class Members did not receive wage notices required under New York law identifying the changes to their pay, and such changes were not reflected on wage statements that complied with New York law.

26.    Even if Collective and Class Members were properly reclassified under the HIWO, TD is nonetheless liable for the claims asserted herein because TD failed to provide Collective and Class Members with adequate notice of the reclassification and corresponding changes to their pay as required under both federal and New York law. *See* 29 U.S.C. § 203(m)(2)(A); 12 NYCCR §§ 146-1.3, 146.2.2.[3] Such failure to provide notice precluded TD from applying the tip credit to Collective and Class Members' wages. Thus, the overtime,

---

[2]    As discussed below, this calculation of the overtime rate under the HIWO is improper.

[3]    This notice is distinct from the aforementioned wage notice required pursuant to N.Y.L.L. § 195(1).

minimum wage, and wage statement theories of liability identified above apply equally even if Collective and Class Members were properly reclassified under the HIWO. Additionally, even if Collective and Class Members were properly reclassified under the HIWO, TD was obligated to provide them with wage notices as required by N.Y.L.L. § 195(1) in order to notify them of the change in pay structure, and Collective and Class Members' wage statements did not, as discussed below, sufficiently reflect this change even if reclassification was proper. *See* N.Y.L.L. § 195(2).

27.     Finally, even if Collective, Class, and/or Sub-Class Members were properly reclassified under the HIWO (which they were not), and even if Collective, Class, and/or Sub-Class Members received adequate notice of TD's intent to utilize the tip credit under federal and state law (which they did not), TD has nonetheless violated federal and state law regarding the payment of overtime wages because it has calculated Collective, Class and/or Sub-Class Members' overtime rates of pay without factoring in their tips. *See* 29 C.F.R. § 531.60; 12 NYCRR § 146–1.4. This practice appears to have been in place since 2016 at the latest, irrespective of reclassification. For example, in April 2022, TD calculated Plaintiff's overtime rate of pay of $16.50 as simply 1.5 times his regular cash rate of pay without the tip credit factored in. *See* Exh. A. And in late December 2016, TD calculated Plaintiff's overtime rate of pay of $10.425 as simply 1.5 times his regular cash rate of pay without the tip credit factored in. *See* Exh. B.  But employers who use the tip credit must factor in tips to the regular rate of pay before applying the tip credit to overtime pay (and it appears TD did neither). *See* 12 NYCRR § 146–1.4 ("It is a violation of the overtime requirement for an employer to subtract the tip credit first and then multiply the reduced rate by one and one half."). Thus, in April 2022, Plaintiff's regular rate of pay – again, assuming the HIWO applies – was $13.20 per hour after factoring in a properly applied tip credit. Plaintiff's overtime rate of pay should

therefore have been $13.20 x 1.5 = $19.80 - $2.20 = $17.60 per hour. And in December 2016 (when Plaintiff was classified under the MWO), Plaintiff's regular rate of pay was $9.00 per hour after factoring in a properly applied tip credit. Plaintiff's overtime rate of pay should therefore have been $9.00 x 1.5 = $13.50 - $2.20 = $11.30 per hour.[4] Plaintiff is informed and believes TD applied this improper calculation of overtime pay to all Collective, Class, and/or Sub-Class Members. Moreover, as Exhibits A and B demonstrate, the information provided on TD's paystubs – even if Collective, Class, and/or Sub-Class Members were properly reclassified under the HIWO and were provided with adequate notice of TD's intent to utilize the tip credit – is inadequate and insufficient to allow Collective and Class Members to understand their pay and determine whether they have been properly paid (*e.g.*, for overtime hours worked) as required by N.Y.L.L. § 195(3).

## COLLECTIVE ACTION ALLEGATIONS

28.    Plaintiff's claim for overtime damages and liquidated damages under the FLSA is brought on behalf of himself and all others similarly situated ("Collective Members"). This putative collective is defined as:

> "All current and former individuals employed by TD dealers from November 10, 2019, to the final disposition of this action."

29.    Plaintiff and other Collective Members are similarly situated pursuant to 29 U.S.C. § 216(b) because each of them was subject to TD's company-wide practice of improperly classifying them under the HIWO and resulting failure to pay full overtime compensation owed to Collective Members for hours worked in excess of 40 per week. Plaintiff and other Collective Members are also similarly situated because even if they were properly reclassified under the

---

[4]    For simplification, Plaintiff uses the MWO cash wage and tip credit amount in effect through December 30, 2016, even though the pay period ended January 1, 2017.

HIWO, they were not provided with adequate notice of TD's intent to apply the tip credit under federal or state law, and were therefore still undercompensated for hours worked in excess of 40 per week. Plaintiff and other Collective Members are also similarly situated because even if Plaintiff and other Collective Members were properly reclassified under the HIWO, and even if Plaintiff and other Collective Members received adequate notice of TD's intent to utilize the tip credit under federal and state law, TD has still violated the FLSA regarding the payment of overtime wages because it has calculated Plaintiff and other Collective Members' overtime rates of pay without factoring in their tips.

## CLASS ACTION ALLEGATIONS

30.    Plaintiff's claims for minimum wage damages, overtime damages, liquidated damages, wage statement penalties, and wage notice penalties under the N.Y.L.L. are brought on behalf of himself and all others similarly situated whom TD reclassified under the HIWO ("Class Members"). This putative class is defined as:

> "All current and former individuals employed by TD as casino dealers from June 30, 2020 to the final disposition of this action."

31.    Plaintiff's claims for overtime damages, liquidated damages relating thereto, and wage statement penalties relating thereto, under the N.Y.L.L. are also brought on behalf of himself and all others similarly situated, irrespective over their reclassification under the HIWO ("Sub-Class Members"). This putative Sub-Class is defined as:

> "All current and former individuals employed by TD as casino dealers from November 10, 2016, to the final disposition of this action."

## A.    ASCERTAINABILITY

32.    Plaintiff is informed and believes that the identities of Class Members and Sub-Class Members are ascertainable through TD's personnel records.

**B.    NUMEROSITY**

33.    Plaintiff is informed and believes that there are hundreds of Class Members and Sub-Class Members, and that it would be impracticable to bring them all before the Court.

**C.    COMMONALITY**

34.    Questions of law and fact common to Class Members include, for example:

- Whether TD has improperly classified Class Members under the HIWO;
  - If so, whether Class Members have been properly paid the New York minimum wage for all hours worked;
  - If so, whether Class Members have been properly paid under New York law for all overtime hours worked;
  - If so, whether Class Members' wage statements have been improper under New York law;
  - If so, whether Class Members received proper wage notices under New York law;
- Even if TD properly reclassified Class Members under the HIWO,
  - Whether Class Members received adequate notice of TD's intent to utilize the tip credit under New York law;
    - If not, whether Class Members have been properly paid the New York minimum wage for all hours worked;
    - If not, whether Class Members have been properly paid under New York laws for all overtime hours worked;
    - If not, whether Class Members' wage statements have been improper under New York law;
    - If not, whether Class Members received proper wage notices under

New York law;

- Even if TD properly reclassified Class Members under the HIWO, and even if Class and/or Sub-Class Members received adequate notice of TD's intent to utilize the tip credit under New York law,
  - o Whether Class Members and/or Sub-Class Members were improperly paid for overtime hours worked under New York law; and
  - o Whether Class Members' and/or Sub-Class Members' wage statements were improper under New York law.

35.    Issues common to the classes can be resolved with class-wide evidence, including evidence that TD's misclassification applied to all Class Members, and evidence that this misclassification resulted in (1) systematic minimum wage and overtime violations; (2) Class Members receiving inaccurate wage statements during every pay period during the relevant time period; and (3) Class Members receiving inaccurate or no wage notices. Further, even if reclassification under the HIWO was proper, issues common to the class can be resolved with class-wide evidence, including evidence that TD failed to properly notify Class Members of TD's intent to utilize the tip credit under New York law, resulting in the minimum wage, overtime, wage statement, and wage notice violations as discussed herein. Further, even if reclassification under the HIWO was proper, and even if TD properly notified Class Members of TD's intent to utilize the tip credit under state law, issues common to the class and/or sub-class can be resolved with class-wide evidence, including evidence that TD used an improper formula to calculate Class Members' and/or Sub-Class Members' overtime rates of pay and accordingly failed to provide proper wage statements to Class Members and/or Sub-Class Members.

**D.    TYPICALITY**

36.    Plaintiff's claims are typical, if not identical, to the claims that could be asserted by

all Class Members and Sub-Class Members, as Plaintiff's claims arise from TD's minimum wage, overtime, wage statement, and wage notice violations applicable to all Class Members and/or Sub-Class Members as described herein.

**E.      ADEQUACY**

37.      Plaintiff will adequately represent the interests of Class Members and Sub-Class Members because there are no conflicts between Plaintiff and any Class Members or Sub-Class Member and because Plaintiff's counsel has the experience and skill to zealously advocate for the interests of Class Members and Sub-Class Members.

**F.      PREDOMINANCE**

38.      Common issues predominate over individualized inquiries in this action because TD's liability for minimum wage overtime, wage statement, and wage notice violations arising from its misclassification of Class Members – or absent misclassification of Class Members and/or Sub-Class Members –  can be established as to all Class Members and/or Sub-Class Members with classwide evidence as discussed above.

**G.      SUPERIORITY**

39.      There are substantial benefits to proceeding as a class action that render proceeding as a class superior to any alternatives, including the fact that it will provide a realistic means for Class Members and/or Sub-Class Members to recover damages and penalties; it would be substantially less burdensome on the courts and the parties than numerous individual proceedings; many Class Members and/or Sub-Class Members may be unaware that they have legal recourse for the conduct alleged herein; and because issues common to Class Members and/or Sub-Class Members can be effectively managed in a single proceeding.

//

//

**FIRST CLAIM**
**FAILURE TO PAY OVERTIME**
**29 U.S.C. § 207**
**(On Behalf of all Collective Members)**

40.     Plaintiff, on behalf of himself and all Collective Members, realleges and incorporates by reference the allegations in the preceding paragraphs as if fully alleged herein.

41.     The FLSA states that an employee must be paid wages equal to one and one-half (1.5) times the employee's regular rate of pay for all hours worked in excess of 40 per week.

42.     Collective Members, including Plaintiff, have worked in excess of forty (40) hours per week on a regular basis but have not been paid the full amount of overtime premium pay owed for hours worked in excess of forty (40) per week pursuant to the FLSA as described herein.

43.     Accordingly, Collective Members are entitled to damages for TD's failure to pay overtime wages in violation of the FLSA.

44.     Further, as described herein, TD's actions were not in good faith, nor did TD have reasonable grounds for believing its actions were not in violation of the FLSA. Accordingly, Collective Members are entitled to liquidated damages pursuant to 29 U.S.C. § 216.

**SECOND CLAIM**
**FAILURE TO PAY OVERTIME**
**12 NYCCR § 142 or § 146, N.Y.L.L. § 650, *et seq.*, N.Y.L.L. § 198(1-a)**
**(On Behalf of all Class Members and Sub-Class Members)**

45.     Plaintiff, on behalf of himself and all Class Members and Sub-Class Members, realleges and incorporates by reference the allegations in the preceding paragraphs as if fully alleged herein.

46.     The Minimum Wage Act, N.Y.L.L. § 650, *et seq.*, and specifically N.Y.L.L. §§ 655-656, delegated authority to the New York State Commissioner of Labor to issues regulations governing not just minimum wage, but also overtime pay. Pursuant to this authority, the Commissioner promulgated 12 NYCCR § 142 (the MWO) which states, in relevant part, that an

employee must be paid wages equal to one and one-half (1.5) times the employee's regular rate of pay for all hours worked in excess of 40 per week. The HIWO, 12 NYCCR § 146, similarly provides that an employee must be paid wages equal to one and one-half (1.5) times the employee's regular rate of pay for all hours worked in excess of 40 per week, and sets forth the requirements an employer must meet to apply a tip credit to its overtime obligations. N.Y.L.L. § 663 provides that employees may bring a civil action for any underpayment of wages, including overtime wages, to which he or she is entitled under the Minimum Wage Act and attendant regulations, including 12 NYCCR § 142 and 146. Similarly, N.Y.L.L. § 198(1-a) provides that employees may recover the full amount of any underpayment of wages in a court action. Further, pursuant to N.Y.L.L. § 663, any agreement between the employee, and the employer to work for less than such wage shall be no defense to such action.

47.    As described herein, Class Members and/or Sub-Class Members, including Plaintiff, have worked in excess of forty (40) hours per week on a regular basis but have not been paid the full amount of premium pay owed for hours worked in excess of 40 in a week as required by either the MWO or the HIWO.

48.    Accordingly, Class Members and/or Sub-Class Members are entitled to damages for TD's failure to pay overtime wages in violation of New York law.

49.    Further, as described herein, TD's actions have not been in good faith. Accordingly, Class Members are entitled to liquidated damages pursuant to N.Y.L.L. §§ 663(1) and/or 198(1-a).

### THIRD CLAIM
### FAILURE TO PAY MINIMUM WAGE
### 12 NYCCR § 142 or § 146, N.Y.L.L. § 650, *et seq.*, N.Y.L.L. § 198(1-a)
### (On Behalf of all Class Members)

50.    Plaintiff, on behalf of himself and all Class Members, realleges and incorporates by reference the allegations in the preceding paragraphs as if fully alleged herein.

51.     The Minimum Wage Act, N.Y.L.L. § 650, *et seq.*, and specifically N.Y.L.L. § 655-656, delegated authority to the New York State Commissioner of Labor to issues regulations governing minimum wage. Pursuant to this authority, the Commissioner promulgated 12 NYCCR § 142 (the MWO) which states, in relevant part, that an employee must be paid a minimum wage for all hours worked. Similarly, the Commissioner promulgated 12 NYCCR § 146 (the HIWO) which states, in relevant part, that employees covered by the HIWO are subject to a minimum hourly wage and tip credit and sets forth the requirements an employer must meet to apply the tip credit to its minimum wage obligations. N.Y.L.L. § 663 provides that employees may bring a civil action for any underpayment of wages, including minimum, to which he or she is entitled under the Minimum Wage Act and attendant regulations, including 12 NYCCR §§ 142 and 146. Similarly, N.Y.L.L. § 198(1-a) provides that employees may recover the full amount of any underpayment of wages in a court action. Further, pursuant to N.Y.L.L. § 663, any agreement between the employee, and the employer to work for less than such wage shall be no defense to such action.

52.     As alleged herein, Class Members, including Plaintiff, have received less than New York minimum wage for each of their hours worked since June 30, 2020 under either the MWO or the HIWO.

53.     Accordingly, Class Members are entitled to damages for TD's failure to pay minimum wage in violation of New York law.

54.     Further, as described herein, TD's actions concerning payment of minimum wage have not been in good faith. Accordingly, Class Members are entitled to liquidated damages pursuant to N.Y.L.L. §§ 663(1) and/or 198(1-a).

//

//

**FOURTH CLAIM**
**FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS**
**N.Y.L.L. § 195(3)**
**(On Behalf of all Class Members and Sub-Class Members)**

55.    Plaintiff, on behalf of himself and all Class Members and Sub-Class Members, realleges and incorporates by reference the allegations in the preceding paragraphs as if fully alleged herein.

56.    N.Y.L.L. § 195(3) provides that "[f]or all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay;  the overtime rate or rates of pay;  the number of regular hours worked, and the number of overtime hours worked."

57.    As alleged herein, TD's wage statements provided to Class Members and/or Sub-Class Members have not set forth accurate information as required by § 195(3).

58.    Plaintiff and Class Members and/or Sub-Class Members have suffered injury as a result of TD's violations of section 195(3) because they have been unable to discern from their wage statements whether they have been properly paid under the N.Y.L.L.

59.    Accordingly, Class Members and/or Sub-Class Members are entitled to penalties pursuant to N.Y.L.L. § 198(1-d), which provides for recovery in a civil action of fifty dollars for each workday that the wage statement violations occurred, not to exceed a total of five thousand dollars.

**FIFTH CLAIM**
**FAILURE TO PROVIDE ACCURATE WAGE NOTICES**
**N.Y.L.L. § 195(1)**
**(On Behalf of all Class Members)**

60.    Plaintiff, on behalf of himself and all Class Members, realleges and incorporates by reference the allegations in the preceding paragraphs as if fully alleged herein.

18

61.    N.Y.L.L. § 195(1) requires every employer to provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary. Each time the employer provides such notice to an employee, the employer shall obtain from the employee a signed and dated written acknowledgement, in English and in the primary language of the employee, of receipt of this notice, which the employer shall preserve and maintain for six years. Such acknowledgement shall include an affirmation by the employee that the employee accurately identified his or her primary language to the employer, and that the notice provided by the employer to such employee pursuant to this subdivision was in the language so identified or otherwise complied with paragraph (c) of this subdivision, and shall conform to any additional requirements established by the commissioner with regard to content and form. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the notice must state the regular hourly rate and overtime rate of pay. Further, N.Y.L.L. § 195(2) requires employers to notify employees in writing of any changes to the information set forth above unless such changes are reflected on employees' wage statements.

62.    As alleged herein, upon reclassification under the HIWO, TD failed to provide

Class Members with wage notices including the information required under New York law, and any subsequent wage statements did not adequately reflect Class Members' new pay structure.

63.    Plaintiff and Class Members have suffered injury as a result of TD's violations of section 195(1) because they were unable to readily discern whether and/or how their pay structure had changed upon reclassification.

64.    Accordingly, Class Members are entitled to penalties pursuant to N.Y.L.L. § 198(1-b), which provides for recovery in a civil action of fifty dollars for each workday that the wage notice violations occurred, not to exceed a total of five thousand dollars.

**PRAYER FOR RELIEF**

Plaintiff prays for relief as follows:

a.    Certification of this action as a collective and class action;

b.    Designation of Plaintiff as representative of the putative Collective, Class, and Sub-Class;

c.    Designation of Plaintiff's counsel as counsel for the putative Collective, Class, and Sub-Class;

d.    Damages for failure to pay overtime wages to Collective Members, Class Members, and Sub-Class Members pursuant to 29 U.S.C. § 216(b) and 12 NYCCR §§ 142 or 146, N.Y.L.L. §§ 198(3) and 663(1);

e.    Liquidated damages for failure to pay overtime wages to Collective Members, Class Members, and Sub-Class Members as provided by 29 U.S.C. § 216(b) and N.Y.L.L. §§ 663(1) and/or 198(1-a);

f.    Damages for failure to pay minimum wages to Class Members pursuant to 12 NYCCR §§ 142 or 146, N.Y.L.L. §§ 198(3) and 663(1);

g.      Liquidated damages for failure to pay minimum wages to Class Members pursuant N.Y.L.L. §§ 663(1) and/or 198(1-a);

h.      Penalties for failure to provide accurate wage statements to be paid to Class Members and Sub-Class Members pursuant to N.Y.L.L. § 198(1-d);

i.      Penalties for failure to provide accurate wage notices to be paid to Class Members pursuant to N.Y.L.L. § 198(1-b);

j.      Attorneys' fees pursuant to 29 U.S.C. § 216(b), N.Y.L.L. §§ 663(1) and/or 198(1-a), and N.Y.L.L. 198(1-b and 1-d);

k.      Costs of litigation pursuant to 29 U.S.C. § 216(b), N.Y.L.L. §§ 663(1) and/or 198(1-a), and N.Y.L.L. 198(1-b and 1-d);

l.      Pre-judgment interest pursuant to federal law, if applicable, and N.Y.L.L. §§ 663(1) and/or 198(1-a);

m.      Post-judgment interest pursuant to 28 U.S.C. § 1961(a) and NY CLPLR § 5001, *et seq.*;

n.      Declaratory relief; and

o.      Any other relief the Court deems proper.

//

//

//

//

//

//

//

//

21

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby respectfully demands a trial by jury in this matter.

Respectfully submitted,


Matthew D. Carlson
(State Bar No. 5802681)
LAW OFFICE OF MATTHEW D.
  CARLSON
3959 N. Buffalo Road, Suite 29
Orchard Park, NY 14127
Telephone: (716) 242-1234
mdcarlson@mdcarlsonlaw.com

Attorney for Plaintiff


Dated:  November 28, 2022

# EXHIBIT A

| CO. V53 | FILE 005956 | DEPT. 201000 | CLOCK U | VCHR. NO. 0000150082 | 1 |

# Earnings Statement



TIOGA DOWNS RACETRACK LLC
2384 WEST RIVER ROAD
NICHOLS NY 13812

| Period Beginning: | 04/04/2022 |
| Period Ending: | 04/10/2022 |
| Pay Date: | 04/14/2022 |

Taxable Marital Status:
Exemptions/Allowances:





**DAVID IVAN POTTER**

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 11.0000 | 40.00 | 440.00 | 6,051.55 |
| Overtime | 16.5000 | 8.00 | 132.00 | 136.13 |
| Toke Tips | | | 865.33 | 10,083.53 |
| Floating Hol | | | | 105.60 |
| Holiday | | | | 105.60 |
| PSL | | | | 250.80 |
| PSL Carryover | | | | 277.20 |
| PTO Carry | | | | 105.60 |
| Retro Pay | | | | 16.24 |
| **Gross Pay** | | | **$1,437.33** | 17,132.25 |

| Net Check | $0.00 |

\* Excluded from federal taxable wages

Your federal taxable wages this period are
$1,351.09

| Deductions | Statutory | | |
|---|---|---|---|
| | Federal Income Tax | -176.35 | 1,754.30 |
| | Social Security Tax | -89.11 | 1,062.20 |
| | Medicare Tax | -20.84 | 248.42 |
| | NY State Income Tax | -65.49 | 738.89 |
| | NY SDI Tax | -0.60 | 9.00 |
| | NY Paid Family Leave Ins | -7.34 | 87.56 |
| | **Other** | | |
| | Associate Life | -17.91 | 268.65 |
| | Dues - Unite | -10.34 | 149.93 |
| | Spouse Life | -4.78 | 71.70 |
| | 401k | -86.24* | 1,027.92 |
| | 401k Loan | -68.70 | 1,030.50 |
| | **Net Pay** | | **$889.63** |
| | Checking Acct 1 | -889.63 | |

| Other Benefits and Information | this period | total to date |
|---|---|---|
| Totl Hrs Worked | 48.00 | |
| Prem | | 1,027.92 |
| Psl | | 32.00 |
| Pto | | 41.72 |
| Ptocarry | | 13.85 |
| Toke Tips | | 10,083.53 |
| 401K | | 685.28 |

**Important Notes**
607-699-7681

BASIS OF PAY: HOURLY

# EXHIBIT B



  VSS  0005858  201000  0   0000010057

171-0001

## Earnings Statement

*TIOGA DOWNS GAMING, RACING & ENTERTAINMENT LLC.*
*2384 WEST RIVER ROAD*
*NICHOLS, NEW YORK 13812*

| | |
|---|---|
| Period Beginning: | 12/26/2016 |
| Period Ending: | 01/01/2017 |
| Pay Date: | 01/05/2017 |

Taxable Marital Status: 
Exemptions/Allowances:

*O 1*

### DAVID POTTER



| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 6.9500 | 40.00 | 278.00 | |
| O/T | 10.4250 | 4.00 | 41.70 | 41.70 |
| Toke Tips | | | 705.60 | 705.60 |
| **Gross Pay** | | | **$1,025.30** | 1,025.30 |

| Other Benefits and Information | this period | total to date |
|---|---|---|
| Toke Tips | | 705.60 |

**Important Notes**
607-699-3900

| Deductions | | this period | year to date |
|---|---|---|---|
| **Statutory** | | | |
| Federal Income Tax | | -143.85 | 143.85 |
| Social Security Tax | | -63.57 | 63.57 |
| Medicare Tax | | -14.87 | 14.87 |
| NY State Income Tax | | -49.21 | 49.21 |
| NY SUI/SDI Tax | | -0.60 | 0.60 |
| **Other** | | | |
| Unite - New Due | | -9.84 | 9.84 |
| **Net Pay** | | **$743.36** | |
| Checking | | -743.36 | |
| **Net Check** | | **$0.00** | |

Your federal taxable wages this period are
$1,025.30