# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF NEW YORK

# BINGHAMTON DIVISION

|  |  |  |
|---|---|---|
| DAVID POTTER, on behalf of himself and others similarly situated, | : : : : | Civil Action No.: |
| Plaintiff, | : : | 3:22-cv-00869-TJM-ML |
| v. | : : | |
| TIOGA DOWNS RACETRACK, LLC, | : : | |
| Defendant. | : : : | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................ 1

II.     FACTUAL BACKGROUND ...................................................................................... 1

    A.     LITIGATION HISTORY ................................................................................ 1

    B.     DISCOVERY ................................................................................................... 2

    C.     MEDIATION ................................................................................................... 4

    D.     TERMS OF THE SETTLEMENT ................................................................... 4

        1.     The Settlement Class and Collective .................................................. 5

        2.     Notice Plan ......................................................................................... 5

        3.     Settlement Fund .................................................................................. 6

        4.     Releases .............................................................................................. 6

        5.     Plan of Allocation .............................................................................. 6

III.    DISCUSSION .............................................................................................................. 7

    A.     THE CLASS SETTLEMENT .......................................................................... 8

        1.     Class Certification .............................................................................. 8

            a.     Numerosity ............................................................................. 8

            b.     Commonality .......................................................................... 9

            c.     Typicality ............................................................................... 9

            d.     Adequacy ............................................................................. 10

            e.     Ascertainability ................................................................... 10

            f.     Predominance ...................................................................... 11

            g.     Superiority ........................................................................... 11

        2.     Appointment of Class Counsel ........................................................ 12

        3.     The Class Settlement Is Fair, Adequate, and Reasonable ............... 13

            a.     Procedural Fairness ............................................................. 13

            b.     Substantive Fairness ............................................................ 14

    B.     THE FLSA SETTLEMENT ........................................................................... 16

        1.     Certification of the Proposed FLSA Collective ............................... 16

        2.     Fairness of the FLSA Settlement ..................................................... 16

        3.     The Settlement Has No Obvious Deficiencies ................................. 17

            a.     Release ................................................................................. 17

            b.     Class and Collective Notice Plan ........................................ 18

            c.     Plan of Allocation ............................................................... 19

d.   Attorney's Fees and Costs.................................................................. 20

e.   Named Plaintiff Service Award ........................................................ 21

f.   Settlement Administrator .................................................................. 22

C.   FAIRNESS HEARING ........................................................................... 23

VII.   CONCLUSION.................................................................................................. 23

## TABLE OF AUTHORITIES

**Cases**

*Alleyne v. Time Moving & Storage Inc.*,
   264 F.R.D. 41 (E.D.N.Y. 2010) ................................................................. 15

*Anderson v. Team Prior, Inc.*,
   2022 WL 1156056 (D. Me. Apr. 19, 2022) ............................................... 22

*Apparicio v. Radioshack Corp.*,
   2010 WL 11507856 (C.D. Cal. June 7, 2010) .......................................... 22

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) .............................................................. 21

*Bondi v. DeFalco*,
   2020 WL 2476006 (S.D.N.Y. May 13, 2020) .......................................... 18

*Capsolas v. Pasta Res. Inc.*,
   2012 WL 1656920 (S.D.N.Y. May 9, 2012) ............................................ 14

*Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*,
   1987 WL 7030 (S.D.N.Y. Feb. 13, 1987) ................................................ 15

*Castagna v. Madison Square Garden, L.P.*,
   2011 WL 2208614 (S.D.N.Y. June 7, 2011) ............................................ 13

*Charles v. Opinion Access Corp.*,
   2020 WL 9812930 (E.D.N.Y. Mar. 13, 2020) .......................................... 15

*Chavarria v. New York Airport Serv., LLC*,
   875 F. Supp. 2d 164 (E.D.N.Y. 2012) .......................................... 19, 21, 22

*Cheeks v. Freeport Pancake House, Inc.*,
   796 F .3d 199 (2d Cir.2015) ...................................................................... 16

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir.1974) ................................................................. 14, 15

*Clark v. Ecolab Inc.*,
   2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) ......................................... 14

*Clark v. Ecolab, Inc.*,
   2010 WL 1948198 (S.D.N.Y. May 11, 2010) .......................................... 21

*Cruz v. Sal-Mark Rest. Corp.*,
   No. 1:17-CV-0815 (DJS), 2019 WL 355334 (N.D.N.Y. Jan. 28, 2019) ................. 21

*Elliot v. Leatherstocking Corp.*,
   No. 3:10-CV-0934 MAD/DEP, 2012 WL 6024572 (N.D.N.Y. Dec. 4, 2012) ........... 7

*Faroque v. Park W. Exec. Servs.*,
   2020 WL 9812905 (E.D.N.Y. Jan. 29, 2020) ........................................... 14

*Guevoura Fund Ltd. v. Sillerman*,
   2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) .......................................... 19

*Hanifin v. Accurate Inventory & Calculating Serv., Inc.*,
  No. 11 CIV. 1510 MAD ATB, 2014 WL 4352060 (N.D.N.Y. Aug. 20, 2014) ................. 7, 22

*Hatmaker v. PJ Ohio, LLC*,
  2021 WL 8013824 (S.D. Ohio Nov. 18, 2021) ........................................................................ 22

*Hernandez v. Merrill Lynch & Co.*,
  2012 WL 5862749 (S.D.N.Y. Nov. 15, 2012) .................................................................... 13, 14

*Hill v. Cnty. of Montgomery*,
  2021 WL 2227796 (N.D.N.Y. June 2, 2021) ...................................................................... 21, 22

*Holick v. Cellular Sales of New York, LLC*,
  No. 1:12-CV-584 (DJS), 2022 WL 3265133 (N.D.N.Y. July 25, 2022) ................................ 14

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
  2013 WL 12333442 (N.D. Cal. Jan. 8, 2013) ........................................................................ 11

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ............................................................................................. 19

*Joel A. v. Giuliani*,
  218 F.3d 132 (2d Cir. 2000) .................................................................................................. 13

*Johnson v. Brennan*,
  2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ...................................................................... 21

*Kirby v. FIC Restaurants, Inc.*,
  No. 519CV1306FJSML, 2020 WL 5791582 (N.D.N.Y. Sept. 28, 2020) ............................... 21

*Krumbine v. Schneider Nat'l Carriers, Inc.*,
  2013 WL 12209908 (C.D. Cal. Aug. 6, 2013) ....................................................................... 20

*Lizondro-Garcia v. Kefi LLC*,
  300 F.R.D. 169 (S.D.N.Y. 2014) ...................................................................................... passim

*Long v. HSBC USA Inc.*,
  2015 WL 5444651 (S.D.N.Y. Sept. 11, 2015) ...................................................................... 17

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................................... 19

*Marichal v. Attending Home Care Servs., LLC*,
  432 F. Supp. 3d 271 (E.D.N.Y. 2020) ..................................................................................... 7

*Marroquin Alas v. Champlain Valley Specialty of New York, Inc.*,
  No. 515CV00441MADTWD, 2016 WL 3406111 (N.D.N.Y. June 17, 2016) .............. 7, 15, 21

*McReynolds v. Richards–Cantave*,
  588 F.3d 790 (2d Cir. 2009) .................................................................................................. 13

*Meredith Corp. v. SESAC, LLC*,
  87 F. Supp. 3d 650 (S.D.N.Y. 2015) ................................................................................. 19, 20

*Mills v. Cap. One, N.A.*,
  2015 WL 5730008 (S.D.N.Y. Sept. 30, 2015) ...................................................................... 16

*Montalvo v. Flywheel Sports, Inc.*,
  2018 WL 7825362 (S.D.N.Y. July 27, 2018) ........................................................................ 17

*Morris v. Affinity Health Plan, Inc.*,
    2011 WL 6288035 (S.D.N.Y. Dec. 15, 2011) ........................................................ 17

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010).......................................................................................... 11

*Palacio v. E\*TRADE Fin. Corp.*,
    2012 WL 1058409 (S.D.N.Y, Mar. 12, 2012) ............................................................ 14

*Ramirez v. Lovin' Oven Catering Suffolk, Inc.*,
    2012 WL 651640 (S.D.N.Y. Feb. 24, 2012)................................................................ 22

*Roach v. T.L. Cannon Corp.*,
    No. 18-CV-01177, 2019 WL 8685075 (N.D.N.Y. Feb. 28, 2019) ............................ 20

*Rosario v. Valentine Ave. Disc. Store, Co.*,
    828 F. Supp. 2d 508 (E.D.N.Y. 2011) ....................................................................... 16

*Sewell v. Bovis Lend Lease, Inc.*,
    2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012).............................................................. 17

*Spack v. Trans World Ent. Corp.*,
    No. 117CV00553TJMCFH, 2021 WL 1398928  (N.D.N.Y. Apr. 14, 2021) .............. 20

*Stock v. Xerox Corp.*,
    516 F. Supp. 3d 308 (W.D.N.Y. 2021) ....................................................................... 16

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011).......................................................................................... 11

*Tiro v. Pub. House Invs., LLC*,
    2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013)............................................................ 17

*Torres v. Gristede's Operating Corp.*,
    2010 WL 2572937 (S.D.N.Y. June 1, 2010) .............................................................. 14

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S.Ct. 2541 (2011)..................................................................................................... 9

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.2d 96 (2d Cir. 2005)....................................................................................... 7, 13

*Willix v. Healthfirst, Inc.*,
    2010 WL 5509089 (E.D.N.Y. Nov. 29, 2010)............................................................ 14

*Willix v. Healthfirst, Inc.*,
    2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)............................................................... 21

*Wood v. Saroj & Manju Invs. Philadelphia LLC*,
    2021 WL 1945809 (E.D. Pa. May 14, 2021) ............................................................. 22

*Zink v. First Niagara Bank, N.A.*,
    155 F. Supp. 3d 297 (W.D.N.Y. 2016) ....................................................................... 17

**Other Authorities**

Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 11.25 (4th ed.2002) .............. 14

**Rules**

Fed. R. Civ. P. 23 ............................................................................................. 10

Fed. R. Civ. P. 23(a) ........................................................................................... 8

Fed. R. Civ. P. 23(b)(3) ................................................................................. 8, 11

Fed. R. Civ. P. 23(c)(1)(B) ............................................................................... 12

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................... 18

Fed. R. Civ. P. 23(c)(3) .................................................................................... 18

Fed. R. Civ. P. 23(g)(1)(A) ............................................................................... 12

Fed. R. Civ. P. 23(g)(1)(B) ............................................................................... 12

## I.     INTRODUCTION

With the assistance of experienced neutral mediator Krista Gottlieb, Esq., Plaintiff David Potter ("Plaintiff") has reached a proposed settlement with Defendant Tioga Downs Racetrack, LLC ("TD"), which will resolve federal and state wage and hour claims relating to TD's alleged failure to properly compensate TD table games dealers ("dealers") during the relevant time period.  *See* Declaration of Matthew D. Carlson ("Carlson Decl.") at **Exhibit 1** (Settlement Agreement).

In exchange for a release of claims, TD has agreed to a settlement that provides for a non-reversionary settlement fund in the amount of $850,000. As detailed herein and in the Declaration of Matthew D. Carlson ("Carlson Decl."), the settlement provides excellent value to dealers given the potential value of their claims and the risks of further litigation. While Plaintiff was optimistic that he would be successful in this litigation, the settlement was reached in light of the value of claims as well as numerous risks, including the risk that Plaintiff would not be able to obtain Rule 23 and/or conditional certification on a contested motion, the risk that even if Plaintiff was able to certify a class and/or collective, he would be unable to prevail on some or all of his substantive claims or have a limited recovery on such claims, and the risk that TD would be able to successfully maneuver the case into state court, where courts have held that penalties and liquidated damages are not recoverable on a classwide basis. *See* CPLR 901(b).

For the reasons discussed herein and in counsel's Declaration, Plaintiff submits that the Settlement Agreement should be preliminarily approved and notice of the settlement issued.

## II.     FACTUAL BACKGROUND

### A.     LITIGATION HISTORY

On August 23, 2022, Plaintiff filed his original Complaint against TD. Carlson Decl. at ¶ 3; Dkt. No. 1. On September 30, 2022, Plaintiff filed a First Amended Complaint ("1AC") as a

matter of right. Carlson Decl. at ¶ 3; Dkt. No. 11. Thereafter, Plaintiff filed the operative Second

Amended Complaint ("2AC"). Dkt. No. 18. Plaintiff asserts claims under New York law for

failure to pay minimum wage and penalties relating thereto arising from TD's implementation of

a tip credit after its reclassification of dealers from New York's Miscellaneous Wage Order

("MWO") to New York's Hospitality Industry Wage Order ("HIWO"). Carlson Decl. at ¶ 3; Dkt.

No. 18 at ¶¶ 1-5. Specifically, Plaintiff alleges that TD illegally applied the HIWO tip credit to

its minimum wage obligation because TD improperly reclassified dealers under the HIWO or,

alternatively, because TD allegedly did not properly notify dealers of their reclassification or

new tip credit claimed by TD under the HIWO. Carlson Decl. at ¶ 3; Dkt. No. 18. at ¶¶ 12-26.

Plaintiff also asserts overtime claims under New York and federal law arising from the

reclassification as well as TD's alleged failure to include tips in its calculation of dealers' rates of

pay and wage statement and wage notice penalties arising therefrom. Carlson Decl. at ¶ 3; Dkt.

No. 11. at ¶¶ 24, 27. TD answered Plaintiff's operative Complaint. Carlson Decl. at ¶ 3; Dkt. No.

19.[1]

## B.    DISCOVERY

Following the Initial Case Management Conference, the parties began the process of

exchanging written discovery. Carlson Decl. at ¶ 4. To start, Plaintiff propounded requests for

fifteen categories of documents and eighteen interrogatories. *Id*. TD provided written responses

to each, as well as a 3,139-page document production including, for example, a sampling of

wage statements, job descriptions, and internal wage change documentation. *Id*. Plaintiff's

counsel personally reviewed and analyzed every document in TD's production. *Id*. In connection

with mediation, TD also provided data and information necessary to reasonably calculate

---

[1]    On February 25, 2021, Plaintiff filed a complaint with the New York Department of
Labor concerning his alleged under the HIWO. Carlson Decl. at n. 1. On March 16, 2022, the
Department of Labor ruled in TD's favor. *Id.*

potential damages and penalties (in addition to wage statements) including, *inter alia*, (1) the number of dealers during the relevant period for minimum wage and overtime claims; (2) dealers' hours worked during the period in which Plaintiff contends TD improperly applied a tip credit under New York law; and (3) dealers' overtime hours worked during the relevant period for overtime claims. *Id*. Using this data and reasonable extrapolations therefrom, Plaintiff's counsel was able to assign realistic dollar values to each claim in light of the provided data as well as the legal and factual risks associated with each claim. *Id.*; *see also* Carlson Decl. at ¶¶ 8-50.

Plaintiff's counsel also considered information and legal arguments, most notably including (1) argument and authority that, if adopted by the Court, would have significantly reduced dealers' potential minimum wage damages; (2) argument and authority that suggests TD would have been within its rights to moot dealers' modestly valued federal law claims, potentially resulting in Plaintiff's case being dismissed from federal court and re-filed in state court – where courts have held that significant penalties and liquidated damages at issue would not be recoverable on a classwide basis, *see* CPLR 901(b); and (3) authority that creates significant hurdles to establishing standing to recover statutory penalties in federal court. Carlson Decl. at ¶¶ 5; 8-50 (discussing these and other risks pertaining to each claim).

TD propounded to Plaintiff requests for ten categories of documents. Carlson Decl. at ¶ 6. In response, Plaintiff produced 1,579 pages of documents, including his previously filed and rejected complaint with the New York Department of Labor and communications with Department of Labor representatives, numerous communications with Plaintiff's union and elected officials, as well as all of his paystubs. *Id*. Plaintiff's counsel also made a Freedom of Information of Request to the New York Department of Labor and received and produced a "Labor Standards' Field Investigator's Manual" that discussed, *inter alia*, definitions and

examples pertaining to the hospitality industry. *Id*. Plaintiff's counsel personally reviewed and analyzed every document in Plaintiff's production. *Id*.

## C.    MEDIATION

In or around late October 2023, in accordance with the Court's Order referring the case to mandatory mediation, the parties engaged Krista Gottlieb as mediator. Carlson Decl. at ¶ 7. As set forth in Ms. Gottlieb's Mediator Biography, she has significant experience in complex employment matters such as this one.[2] Plaintiff submitted a substantial mediation brief to the Mediator and to TD's counsel, discussing numerous issues in the case pertaining to class certification, liability, damages, penalties, and procedural matters. Carlson Decl. at ¶ 7. TD's counsel also exchanged numerous factual and legal arguments, and thereafter counsel for the parties engaged in a robust dialogue concerning the many complex procedural and substantive disputes in the case.  *Id*. With data and documents produced in formal and informal discovery, and a thorough understanding of the parties' respective factual and legal positions, Plaintiff's counsel was able thoroughly evaluate all matters pertaining to liability, class certification, damages, penalties, and procedural matters. *Id*. With the Mediator's input and guidance, the parties made substantial progress in understanding each other's legal and factual arguments in advance of mediation, leading to a productive and hard-fought mediation and executed term sheet. *Id*. In the several months following mediation, counsel engaged in intensive negotiations regarding the details of the settlement, resulting in the proposed Settlement Agreement. *Id*.

## D.    TERMS OF THE SETTLEMENT

The Settlement Agreement provides as follows:

//

---

[2]    *See* https://www.nywd.uscourts.gov/sites/nywd/files/ Buffalo%20Mediator% 20Biographies% 207.21.20.pdf.

1.      **The Settlement Class and Collective**

The NYLL Class is defined as: "all individuals employed as a dealer (including table game dealers, poker room dealers, and dual-rate dealers/floor supervisors) at Tioga Downs Racetrack LLC at any time from November 10, 2016 through January 4, 2023" unless the dealer opts out from the settlement. Agreement at ¶ 1.16.

The FLSA Collective is defined as: "all individuals employed as a dealer (including table game dealers, poker room dealers, and dual-rate dealers/floor supervisors) at Tioga Downs Racetrack LLC at any time from August 23, 2019 through January 4, 2023, who cash a check for this Final Individual Settlement Amount in the Litigation." Agreement at ¶ 1.10.

2.      **Notice Plan**

The Settlement Administrator will send the Notice Form via First Class United States Mail to all dealers in the NYLL Class and FLSA Collective. Agreement at ¶ 2.4(C); *see also* Exhibit A to Settlement Agreement (Notice Form); *see also* Proposed Order at ¶ 11.

The Notice Form will include information concerning the lawsuit, settlement terms, releases, and estimated settlement payments and the basis thereof. *See* Exh. A. It will explain the process for opting out, and the process for objecting, and information regarding the Fairness Hearing. *Id*. Class and Collective Members will have 60 days to review the notice, challenge their payment amounts if they so choose, and/or opt out or object to the Settlement. *Id.*

After the Effective Date of the Agreement, dealers who have not opted out will be mailed their settlement checks and will have 180 days to cash or negotiate the checks. Agreement at ¶ 3.5(D).  The Settlement Administrator will send one reminder postcard to any settlement check recipients who did not negotiate their settlement checks within 60 days after distribution by the Settlement Administrator, reminding such recipients to cash their checks. Agreement at ¶ 3.5(B).

The Settlement Administrator will maintain call and email support. *See* Exh. A at ¶ 15.

**3.    Settlement Fund**

Under the terms of the settlement, TD will pay a non-reversionary settlement fund of $850,000. Agreement at ¶ 1.26.

**4.    Releases**

In exchange for payment under the Settlement Agreement, dealers who do not opt out will release NYLL claims related to the conduct alleged in the case. Agreement at ¶ 3.7(A). Dealers who cash their checks will also release FLSA claims related to the conduct alleged in the case. Agreement at ¶ 3.7(B). The releases for unnamed class members do not release unrelated claims (*i.e.*, claims for discrimination), or claims unrelated to the subject matter of the litigation. *Id.* Plaintiff Potter has agreed to a broader release of all claims against TD, beyond claims related to the subject matter of the litigation. Agreement at ¶ 3.7(C).

**5.    Plan of Allocation**

Subject to Court approval, from the gross settlement fund $850,000, a maximum of $7,000 will be set aside for payment to the Settlement Administrator, one-third of the gross payment ($283,333.33) will be allocated to attorney's fees, up to $5,000 will be allocated to Plaintiff's costs of litigation, $10,000 will be allocated to the named Plaintiff as a Service Award, and an amount to be determined by the Settlement Administrator will be allocated to employer-side taxes. Agreement at ¶ 3.1(C). The remaining funds are referred to as the Net Settlement Fund. Agreement at ¶ 1.6.

The Net Settlement Fund will be distributed to dealers pursuant a "point system," whereby dealers are awarded points based on their overtime hours worked and, if they worked in the time period during which minimum wage claims are at issue, their regular hours worked. Agreement at ¶ 3.5; *see also* Carlson Decl. at ¶ 51.  The plan of allocation differentiates and

allocates points based on FLSA and NYLL damages, depending on when the dealer worked. *Id.* Any dealer who would receive less than $50 pursuant to the point system will receive the $50 minimum payment, and unclaimed funds will be transferred to the New York State Comptroller, where the funds will be held in trust unless and until they are claimed. Agreement at ¶ 3.5.

## III.    DISCUSSION

There is a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.2d 96, 116 (2d Cir. 2005); *Marroquin Alas v. Champlain Valley Specialty of New York, Inc.*, No. 515CV00441MADTWD, 2016 WL 3406111, at *3 (N.D.N.Y. June 17, 2016) (same); *Elliot v. Leatherstocking Corp.*, No. 3:10-CV-0934 MAD/DEP, 2012 WL 6024572, at *3 (N.D.N.Y. Dec. 4, 2012) (same); *Hanifin v. Accurate Inventory & Calculating Serv., Inc.*, No. 11 CIV. 1510 MAD ATB, 2014 WL 4352060, at *4 (N.D.N.Y. Aug. 20, 2014) (same, and noting "courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere.").

Preliminary approval is the first step in the settlement of a class action whereby the court must preliminarily determine whether notice of the proposed settlement should be given to class members in such a manner as the court directs, and a hearing scheduled to determine the fairness and adequacy of settlement. *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014) (citing cases). Similarly, a settlement of an FLSA collective action must be judicially approved, and courts within the circuit apply the same two-step preliminary and final approval to settlement of FLSA collective claims wherein collective members have not yet had the opportunity to opt into the case. *Id.* at 179; *see also Marichal v. Attending Home Care Servs., LLC*, 432 F. Supp. 3d 271, 280 (E.D.N.Y. 2020).

**A.     THE CLASS SETTLEMENT**

**1.     Class Certification**

"Before certification is proper for any purpose—settlement, litigation, or otherwise—a court must ensure that the requirements of Rule 23 (a) and (b) have been met." *Lizondro-Garcia*, 300 F.R.D. at 174 (citing cases). Class certification is appropriate under Rule 23 (a) if (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims of the representative parties are typical of the claims of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy"). Fed. R. Civ. P. 23(a). If each of these four threshold requirements are met, class certification is appropriate if the action also satisfies one of the three alternative criteria set forth in Rule 23(b) – in this case, Rule 23(b)(3), which provides that a class action may be maintained where questions of law or fact common to class members predominate over any questions affecting only individual members ("predominance"), and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy ("superiority"). Additionally, some courts in the Second Circuit impose an "implied" requirement of "ascertainability." *Lizondro-Garcia*, 300 F.R.D. at 176.

*a.     Numerosity*

"Although precise calculation of the number of class members is not required, numerosity is generally presumed when the prospective class consists of 40 members or more." *Lizondro-Garcia*, 300 F.R.D. at 174 (internal quotations omitted) (finding numerosity "clearly met" in proposed class of 240 current and former employees)

Here, TD has stated that there are approximately 300 Class Members. Carlson Decl. at ¶ 52. The NYLL Class therefore clearly meets the numerosity requirement.

        *b.     Commonality*

The commonality inquiry requires a court to assess whether there are common questions are capable of "generat[ing] common answers apt to drive the resolution of the litigation." *Lizondro-Garcia*, 300 F.R.D. at 175 (citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011)). In *Lizondro-Garcia* – a case, similar to this one, arising from an employer's alleged failure to properly apply tips to its employees' pay and failure to properly compensate its employees for overtime hours worked – the district court found that just two questions (whether defendants failed to pay overtime and retained tips from employees) would generate answers that will help resolve the claims in the class action, thus meeting the commonality requirement. *Id.*

Here, there are several significant questions that would generate answers "apt to drive the resolution of the litigation": (1) whether TD improperly reclassified dealers or failed to give them proper notice of the reclassification, thus precluding TD from applying the HIWO tip credit; (2) whether TD improperly calculated dealers' overtime rates of pay; and (3) whether TD provided dealers with wage statements and wage notices that properly set forth dealers' rates of pay and/or claimed tip credits. These are critical questions common to all dealers, answers to which would have driven resolution of the litigation. The commonality requirement is therefore met.

        *c.     Typicality*

The typicality requirement is generally met where proposed class members are each employed by defendants in the same positions and subject to the same allegedly unlawful practices. *Lizondro-Garcia*, 300 F.R.D. at 175.

Here, TD employed all Class Members as dealers, and all dealers were subject to the same

allegedly unlawful practices – allegedly improper application of the HIWO tip credit, allegedly improper calculation of overtime rates of pay, and allegedly improper wage notice and wage statements – that gave rise to claims for damages and/or penalties. The NYLL Class therefore meets the typicality requirement.

### d.    Adequacy

"Adequate representation is a twofold requirement: class counsel must be qualified and able to conduct the proposed litigation, and the class representatives must not have interests antagonistic to those of the other class members." *Lizondro-Garcia*, 300 F.R.D. at 175.

Here, as set forth in counsel's concurrently filed Declaration, counsel is qualified and able to represent dealers and has ably represented other classes in numerous other cases, whether for litigation or settlement purposes. Carlson Decl. at ¶¶ 56-63. Indeed, counsel submits that the result in this action is demonstrative of counsel's qualifications and ability. Plaintiff Potter does not have any interests antagonistic to those other dealers, as he has sought the same relief arising from the same alleged conduct as all other dealers and has actively participated in discovery and settlement negotiations. *Lizondro-Garcia*, 300 F.R.D. at 176. The adequate representation requirement has therefore been met.

### e.    Ascertainability

While not an express requirement of Rule 23, some courts have required an identifiable aggrieved class. *Id.* This requirement is typically easily met in wage and hour classes, where a defendant's payroll records contain all necessary identifying information. *Id.*

Here, TD's has produced documents and information confirming the identities and necessary data for Class Members and will provide the Settlement Administrator with all information necessary to calculate payments under the settlement. Agreement at ¶ 1.3. Accordingly, the ascertainability requirement is met.

### f.  Predominance

The predominance requirement is met when "some ... questions can be answered with respect to the members of the class as a whole through generalized proof and that those common issues are more substantial than individual ones." *Myers v. Hertz Corp.*, 624 F.3d 537, 549 (2d Cir. 2010). For example, the court in *Lizondro-Garcia* determined that the predominance requirement had been met because defendants' alleged practices concerning overtime pay and tips applied uniformly to all members of the class. *Lizondro-Garcia*, 300 F.R.D. at 177.

Here, TD's alleged practices concerning overtime pay and tip credits (and claims for damages and penalties arising therefrom) have applied to all dealers or identifiable subsets thereof. And while not all dealers have minimum wage claims, such differences do not defeat predominance in the settlement context where, as here, the difference is accounted for in the plan of allocation. *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 334-35 (3d Cir. 2011) (in context of class settlement, determining that a plan of allocation – rather than use of subclasses – adequately addressed situation where some but not all class members had different claims); *see also In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2013 WL 12333442, at *50 (N.D. Cal. Jan. 8, 2013) (same). Accordingly, the NYLL Class meets the predominance requirement.

### g.  Superiority

"Rule 23(b)(3) also requires plaintiffs to demonstrate that class-wide adjudication is superior to other available methods for fairly and efficiently adjudicating the controversy. In making this determination, the court must balance the advantages of a class action against those of alternative available methods of adjudication." *Lizondro-Garcia*, 300 F.R.D. at 177 (internal quotations omitted). Rule 23(b)(3) sets forth four factors relevant to the superiority inquiry: "the class members' interests in individually controlling the prosecution ... of separate actions;" "the extent and nature of any litigation concerning the controversy already begun by ... class members;"

"the desirability or undesirability of concentrating the litigation of the claims in the particular forum;" and "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

Here, a class action is likely the only vehicle by which dealers can, as a realistic and practical matter, adjudicate their state law claims given the modest value of their individual claims. Additionally, Plaintiff is not aware of any other litigation by individual class members concerning this controversy. Further, concentrating this litigation in the Northern District of New York is appropriate because the allegedly wrongful conduct occurred within its jurisdiction. Last, class adjudication as opposed to multiple individual actions will conserve judicial resources. *Compare Lizondro-Garcia*, 300 F.R.D. at 177-78 (finding superiority requirement met pursuant to same considerations).

### 2.    Appointment of Class Counsel

Rule 23(c)(1)(B) provides that "[a]n order that certifies a class action must ... appoint class counsel under Rule 23(g)." Rule 23(g)(1)(A) sets forth four factors that must be considered in appointing class counsel: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class. A court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

As discussed herein and in counsel's Declaration, Plaintiff's counsel has significant experience litigating wage and hours cases and has demonstrated in-depth knowledge concerning the procedural and substantive law in this case. Carlson Decl. at ¶¶ 8-50, 56-63. Moreover, Plaintiff's counsel has represented the named Plaintiff in this suit from its inception and has expended substantial time and resources identifying and investigating the potential claims in the

action. Accordingly, the Court should appoint Plaintiff's counsel as Class (and Collective) Counsel as set forth in the Agreement. *See* Agreement at ¶ 1.2.

### 3.      The Class Settlement Is Fair, Adequate, and Reasonable

A class settlement should be approved if it is "fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). "A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

#### a.      Procedural Fairness

In assessing procedural fairness, there is a "presumption of fairness, reasonableness, and adequacy as to the settlement where 'a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *McReynolds v. Richards–Cantave*, 588 F.3d 790, 803 (2d Cir. 2009). However, complete formal discovery "is not required for a settlement to be adequate, if the parties obtained sufficient information to understand the claims and negotiate settlement terms." *Castagna v. Madison Square Garden, L.P.*, 2011 WL 2208614, at *6 (S.D.N.Y. June 7, 2011).

Here, the parties engaged in ample formal and mediation-related discovery to understand the factual and legal strengths and weaknesses of Plaintiff's class claims and negotiate settlement terms. Carlson Decl. at ¶¶ 4-50. Moreover, the parties negotiated their settlement at an arm's length with the assistance of an experienced mediator. Indeed, negotiations were hotly contested and debated, with counsel for both sides zealously advocating the legal and factual bases for their positions; it is unlikely the parties would have been able to reach settlement without a neutral mediator. Carlson Decl. at ¶ 7; *see also Hernandez v. Merrill Lynch & Co.*, 2012 WL 5862749, at *2 (S.D.N.Y. Nov. 15, 2012) ("The assistance of an experienced mediator…reinforces that the Settlement Agreement is non-collusive.").

b.    *Substantive Fairness*

"Preliminary approval of a settlement agreement requires only an initial evaluation of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties." *Holick v. Cellular Sales of New York, LLC*, No. 1:12-CV-584 (DJS), 2022 WL 3265133, at *2 (N.D.N.Y. July 25, 2022) (quoting *Torres v. Gristede's Operating Corp.*, 2010 WL 2572937, at *2 (S.D.N.Y. June 1, 2010)). "Courts often grant preliminary settlement approval without requiring a hearing or a court appearance." *Hernandez v. Merrill Lynch & Co.*, 2012 WL 5862749, at *1 (S.D.N.Y. Nov. 15, 2012) (citing *Palacio v. E*TRADE Fin. Corp.*, 2012 WL 1058409, at *1 (S.D.N.Y, Mar. 12, 2012); also citing *Capsolas v. Pasta Res. Inc.*, 2012 WL 1656920, at *1 (S.D.N.Y. May 9, 2012). "Following notice, the Court can hold a hearing, receive input on the proposed settlement, and make a final judgment as to the propriety and fairness of the settlement." *Holick*, 2022 WL 3265133, at *2 (citing *Willix v. Healthfirst, Inc.*, 2010 WL 5509089, at *2 (E.D.N.Y. Nov. 29, 2010)).

"In exercising this discretion, courts should give proper deference to the private consensual decision of the parties." *Holick*, 2022 WL 3265133, at *2 (quoting *Torres*, *supra*, and *Clark v. Ecolab Inc.*, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009)) (internal quotations omitted). Ultimately, "[i]f the proposed settlement 'appears to fall within the range of possible approval,' the court should order that the class members receive notice of the settlement." *Hernandez*, 2012 WL 5862749, at *1 (citing *Clark*, 2009 WL 6615729, at *4 (citing Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 11.25 (4th ed.2002)).[3]

There is no "hard and fast rule" as to the appropriate percentage of a possible recovery represented by a settlement in light of the risks and costs of litigation and the delay in obtaining

---

[3]    Courts typically apply the nine "Grinnell" factors at the final approval stage. *E.g.*, *Faroque v. Park W. Exec. Servs.*, 2020 WL 9812905, at *3 (E.D.N.Y. Jan. 29, 2020) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir.1974)).

any recovery if a case is fully litigated. *Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*, 1987 WL 7030, at \*3 (S.D.N.Y. Feb. 13, 1987) (approving settlement representing forty-five percent of "likely recovery" and fifteen percent of "optimum recovery"). Nonetheless, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n. 2.

Here, as set forth in significant detail in counsel's Declaration, the settlement represents, at worst, nineteen percent of the maximum conceivable recovery in this case. *See* Carlson Decl. at ¶ 49; *compare Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 58 (E.D.N.Y. 2010) (in wage and hour class and collective settlement, finding that thirteen percent of "best possible recovery" was fair and reasonable and noting that the Second Circuit "benchmark" is twelve percent of the best possible recovery); *Charles v. Opinion Access Corp.*, 2020 WL 9812930, at \*3 (E.D.N.Y. Mar. 13, 2020) (approving class and collective wage and hour settlement representing less than six percent of potential maximum recovery). Importantly, this figure includes the kitchen sink – full liquidated damages, full interest, and, most significantly, three million dollars in penalties based on wage statement and wage notice penalties that may not be legally viable. Without those penalties included, the settlement represents between 57% and 2,123% of likely monetary outcomes. *See* Carlson Decl. at ¶ 49.  For further perspective, the settlement represents 156% or 223% of maximum single damages, depending on the success of TD's arguments. *Id.*; *compare Marroquin Alas v. Champlain Valley Specialty of New York, Inc.*, 2016 WL 3406111, at \*5, \*8 (N.D.N.Y. June 17, 2016) (approving class and collective settlement representing 49% of back wages only, excluding liquidated damages and any other potential remedies). Under any standard, this settlement is substantively fair.

//

//

**B.    THE FLSA SETTLEMENT**

**1.    Certification of the Proposed FLSA Collective**

Before issuing notice to members of a proposed Collective (for settlement purposes or otherwise), a court must determine that such individuals are "similarly situated" – meaning "that named plaintiffs and opt-in plaintiffs are alike with regard to some material aspect of their litigation." *Stock v. Xerox Corp.*, 516 F. Supp. 3d 308, 312 (W.D.N.Y. 2021).

Here, the Named Plaintiff and all dealers in the proposed Collective are alike with regard to their claims that TD miscalculated their overtime rates of pay, and thus underpaid them for overtime hours worked, in violation of the FLSA. *See* Dkt. No. 18 (Second Amended Complaint) at ¶¶ 29. Accordingly, Plaintiff and the proposed Collective easily meet the "lenient" standard for issuance of notice. *Rosario v. Valentine Ave. Disc. Store, Co.*, 828 F. Supp. 2d 508, 514 (E.D.N.Y. 2011) ("[t]he similarly situated standard is far more lenient, and indeed, materially different, than the standard for granting class certification under Fed. R. Civ. P. 23.").

**2.    Fairness of the FLSA Settlement**

"A settlement in an FLSA collective action is not effective unless it is approved by either a district court or the United States Department of Labor." *Mills v. Cap. One, N.A.*, 2015 WL 5730008, at *6 (S.D.N.Y. Sept. 30, 2015) (citing *Cheeks v. Freeport Pancake House, Inc.*, 796 F .3d 199 (2d Cir.2015)). "However, settlement of a collective action does not implicate the same due process concerns as the settlement of a class action because, unlike in Rule 23 class actions, the failure to opt in to an FLSA collective action does not prevent a plaintiff from bringing suit at a later date." *Mills*, 2015 WL 5730008, at *6. "Accordingly, an FLSA settlement is examined with less scrutiny than a class action settlement; the court simply asks whether the settlement reflects a fair and reasonable compromise of disputed issues that was reached as a result of contested litigation." *Id.*

Here, FLSA Collective Members receive one point per overtime hour worked to account for their FLSA claims during the relevant time period. This payment plan is consistent with the point value and valuation of NYLL overtime claims, as the per-hour value of the claims is comparable. Carlson Decl. at ¶ 51. Of course, TD would continue to argue that the claim was without substantive merit and/or should be limited in light of its purported good faith conduct. See Dkt. No. 19 (Answer) at ¶ 27 (denying factual allegations concerning overtime claim) and ¶ 73 (asserting good faith defense to liquidated damages). As such, this is "a fair and reasonable compromise of disputed issues for purposes of the FLSA." *E.g.*, *Montalvo v. Flywheel Sports, Inc.*, 2018 WL 7825362, at *4 (S.D.N.Y. July 27, 2018).

### 3.    The Settlement Has No Obvious Deficiencies

A court should also consider any "obvious deficiencies" in a settlement including, for example, issues surrounding the release of claims, the notice plan, the plan of allocation, distribution of residual funds, and, preliminarily, a request for attorneys' fees and named plaintiff service award. *See Zink v. First Niagara Bank, N.A.*, 155 F. Supp. 3d 297, 308 (W.D.N.Y. 2016).

#### a.    Release

First, courts routinely approve settlements, like this one, which release both Rule 23 and FLSA claims when the parties allocate points amongst NYLL and FLSA claims. *Morris v. Affinity Health Plan, Inc.*, 2011 WL 6288035, at *2 (S.D.N.Y. Dec. 15, 2011); *Tiro v. Pub. House Invs., LLC*, 2013 WL 4830949, at *3 (S.D.N.Y. Sept. 10, 2013); *Long v. HSBC USA Inc.*, 2015 WL 5444651, at *2 (S.D.N.Y. Sept. 11, 2015); *Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, at *6 (S.D.N.Y. Apr. 16, 2012); *see also* Agreement at ¶ 3.5(A) (point allocation formula).

Second, whether a class settlement, collective settlement, or a hybrid settlement like this one, releases provisions "must be limited to the claims at issue in this action." *Lazaro-Garcia*,

2015 WL 9162701, at *2; *Bondi v. DeFalco*, 2020 WL 2476006, at *5–6 (S.D.N.Y. May 13, 2020) (approving release of "all wage and hour claims that could have been asserted under federal or state laws"). Here, the unnamed Class and Collective Members release claims "related to the conduct alleged in the case," Agreement at ¶¶ 3.5(A)-(B), which is the proper scope of a class and collective release. Additionally, the FLSA release is operative upon dealers depositing their checks. *See Spack v. Trans World Entertainment Corporation*, No. 1:17-cv-01335-TJM-CFH, Dkt. No. 217-6 at ¶ 2.10(E) (similar approved procedure). Further, the Named Plaintiff releases essentially all claims against TD, Agreement at ¶ 3.5(C), which is appropriate because the broad release serves as consideration for a service award. *Bondi*, 2020 WL 2476006, at *6 (citing cases).

b.    *Class and Collective Notice Plan*

Under Fed. R. Civ. P. 23(c)(2)(B), a class settlement notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a Class Member may enter an appearance through an attorney if the member so desires and appear at the Fairness Hearing; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). A notice must provide "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

Here, the Notice Form contains all information required by Rule 23, is easy to read, and allows dealers to make an informed decision as to whether they wish to participate in the settlement during the 60-day notice period. *See* Exh. A. Though not required, dealers will also be given their estimated payment, the basis therefore, and the opportunity to challenge their

payment amounts. *See id.*; *see also Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *12

(S.D.N.Y. Dec. 18, 2019) ("The aggregate amount available to all claimants was specified and

the formula for determining one's recovery was given. Nothing more specific is needed.").

       c.    *Plan of Allocation*

       "To warrant approval, the plan of allocation must also meet the standards by which

the settlement was scrutinized—namely, it must be fair and adequate." *Chavarria v. New York*

*Airport Serv., LLC*, 875 F. Supp. 2d 164, 175 (E.D.N.Y. 2012) (citing *Maley v. Del Glob. Techs.*

*Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002)) (internal citation and quotations omitted).

"An allocation formula need only have a reasonable, rational basis, particularly if recommended

by experienced and competent class counsel." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d

650, 667 (S.D.N.Y. 2015) (internal citations omitted, citing cases). "Thus, in determining

whether a plan of allocation is fair, courts look primarily to the opinion of counsel." *Id.* (internal

citations omitted, citing cases). Moreover, courts have recognized the importance of a plan that

"has the benefit of simplicity." *Id.*; *see also*, *e.g.*, *In re Payment Card Interchange Fee & Merch.*

*Disc. Antitrust Litig.*, 330 F.R.D. 11, 47 (E.D.N.Y. 2019).

       Here, the Agreement provides for a distribution to dealers tailored to their claims during

the relevant time periods: While dealers' per-hour overtime and minimum wage potential

damages are roughly similar – approximately two dollars per hour – the overtime claims have

fewer factual and legal hurdles than minimum wage claims, and therefore dealers are awarded

one point per overtime hour worked during the relevant overtime period, and .75 points per

regular hour worked during the approximately 2.5-year minimum wage period during which the

minimum wage claim is at issue.[4] Carlson Decl. at ¶ 51. Additionally, as previously noted, the

---

[4]     Wage statement and wage notice penalties, liquidated damages, and interest apply
similarly (if at all) to all dealers, and as such no additional points are awarded for these claims
and/or remedies.

plan properly differentiates and allocates overtime claim points based on FLSA and NYLL

damages, depending on when the dealer worked. *Id.*; *see also* § II(D)(4), *supra*.

      With respect to any unclaimed funds, the settlement provides that any such funds be

directed to the State Comptroller where the funds will be held in trust unless and until the funds

are claimed, as the parties have agreed upon here.[5] Agreement at ¶ 3.5(D); *see also*, *e.g.*,

*Krumbine v. Schneider Nat'l Carriers, Inc.*, 2013 WL 12209908, at *5 (C.D. Cal. Aug. 6, 2013)

(in wage and hour action, approving plan of distribution where any unclaimed funds were

deposited with the state Comptroller in accordance with state law).

       "As many courts have held, a plan of allocation need not be perfect. Instead, an

allocation formula need only have a reasonable, rational basis, particularly if recommended by

experienced and competent class counsel." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650,

667 (S.D.N.Y. 2015) (citing cases, cleaned up). The plan of allocation here is appropriate given

the circumstances of the case.

           *d.    Attorney's Fees and Costs*

      As will be briefed prior to final approval, Plaintiff's Counsel intends to apply for

attorney's fees not to exceed one-third of the gross settlement fund, and for reimbursement of

litigation-related costs. This Court, courts in this District, and other courts throughout the Second

Circuit have routinely approved such requests. *E.g.*, *Spack v. Trans World Ent. Corp.*, No.

117CV00553TJMCFH, 2021 WL 1398928, at *2–3 (N.D.N.Y. Apr. 14, 2021) (in FLSA and

NYLL wage and hour case, awarding fees amounting to one-third of the settlement, plus costs);

*Roach v. T.L. Cannon Corp.,* No. 18-CV-01177, 2019 WL 8685075, at *3 (N.D.N.Y. Feb. 28,

2019) (in FLSA and NYLL wage and hour case, awarding fees amounting to 43 percent of the

---

[5]    *See* https://www.nysenate.gov/newsroom/articles/charles-j-fuschillo-jr/unclaimed-funds-might-be-waiting-you#:~:text=No%2C%20there%20is%20no%20time,you%20until%20you%20claim%20it.

settlement, plus costs); *Kirby v. FIC Restaurants, Inc.*, No. 519CV1306FJSML, 2020 WL
5791582, at *5 (N.D.N.Y. Sept. 28, 2020) (in FLSA and NYLL wage and hour case, awarding
fees amounting to one-third of the settlement, plus costs); *Cruz v. Sal-Mark Rest. Corp.*, No.
1:17-CV-0815 (DJS), 2019 WL 355334, at *7 (N.D.N.Y. Jan. 28, 2019) (in FLSA and NYLL
wage and hour case, approving request for fees and costs in the amount of one-third of the gross
settlement); *Marroquin Alas v. Champlain Valley Specialty of New York, Inc.*, No.
515CV00441MADTWD, 2016 WL 3406111, at *9 (N.D.N.Y. June 17, 2016) (in FLSA and
NYLL wage and hour case, finding fee request at 32% of gross settlement fund, plus costs, to be
"well within the range of reasonableness accepted by the courts of the Second Circuit.") (citing
numerous wage and hour cases in which courts approved fees amounting to one-third of gross
settlement).[6]

### e. Named Plaintiff Service Award

As will also be briefed at final approval, service awards to named plaintiffs "are common
in class action [and FLSA] cases and are important to compensate plaintiff for the time and effort
expended in assisting the prosecution of the litigation, the risks incurred by becoming and
continuing as a litigant and any other burdens sustained by the plaintiff." *Chavarria*, 875 F.
Supp. 2d at 177 (collecting cases). The agreed-upon Service Award in the amount of $10,000 is
in line with awards in other wage and hour settlements in New York district courts and is
particularly appropriate under the circumstances of this case. *E.g.*, *Hanifin*, 2014 WL 4352060,

---

[6]        *See also Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013); *Willix v.
Healthfirst, Inc.*, 2011 WL 754862, at *6-7 (E.D.N.Y. Feb. 18, 2011); *Clark v. Ecolab, Inc.*,
2010 WL 1948198, *8-9 (S.D.N.Y. May 11, 2010); *Johnson v. Brennan*, 2011 WL 4357376, at
*19 (S.D.N.Y. Sept. 16, 2011). *See also see also Hill v. Cnty. of Montgomery*, 2021 WL
2227796, at *9 (N.D.N.Y. June 2, 2021) (in section 1983 case, approving fee award amounting
to thirty percent of settlement despite "missed deadlines" that "led to delays in this case" and
noting that "requested fee is within the range of percentage fees that courts in this Circuit have
awarded in comparable cases") (citing wage and hour cases).

at *11 (approving service award to plaintiff in the amount of $10,000 in recognition of the services rendered on behalf of the class); *Hill v. Cnty. of Montgomery*, 2021 WL 2227796, at *9 (N.D.N.Y. June 2, 2021) (same); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) (same).

As will be detailed in Plaintiff Potter's Declaration and counsel's Declaration at final approval, Plaintiff Potter has expended an extraordinary amount of time providing documents and information in this case on top of his time-consuming efforts in pursuing this matter with the Department of Labor, elected officials, and his union. Indeed, short of the rare representative case that has gone to trial, Plaintiff's counsel cannot recall a named plaintiff who has put as much time and effort into a case as Mr. Potter, which efforts extended far beyond the typical service performed by a named plaintiff.

f.    *Settlement Administrator*

The parties have agreed, subject to Court approval, that CAC Services Group, LLC ("CAC") will administer the settlement pursuant to the procedures set forth in the Agreement. CAC has been appointed as Settlement Administrator in numerous wage and hour actions of various sizes in federal courts throughout the country. *See*, *e.g.*, *Apparicio v. Radioshack Corp.*, 2010 WL 11507856, at *4 (C.D. Cal. June 7, 2010) (24,146 class members); *Hatmaker v. PJ Ohio, LLC*, 2021 WL 8013824, at *3-4 (S.D. Ohio Nov. 18, 2021) (7,565 class members); *Anderson v. Team Prior, Inc.*, 2022 WL 1156056, at *9 (D. Me. Apr. 19, 2022) (1,800 class members); *Wood v. Saroj & Manju Invs. Philadelphia LLC*, 2021 WL 1945809, at *2 (E.D. Pa. May 14, 2021) (532 class members). The $7,000 cap on administration fees, for which Plaintiff will seek final approval at the appropriate time, is also significantly less than fees approved by other courts involving similar numbers of class members. *E.g.*, *Chavarria*, 875 F. Supp. 2d at 170 (approving $11,698.27 administration fee in case involving approximately 200 class

members).

## C.    FAIRNESS HEARING

Finally, while there is no requirement for a preliminary approval hearing, *see* § III(A)(3)(b), *supra*, Plaintiff requests that the Court hold a Fairness Hearing at an available date and time following the Notice Period as set forth in the accompanying Proposed Order. In accordance with the Settlement Agreement and Proposed Order, Plaintiff will submit a Motion for Final Approval and Motion for Attorneys' Fees, Costs, Administrator Expenses, and Named Plaintiff Service Payment no more than seven days before the Fairness Hearing. Agreement at ¶ 7.3.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiff submit that the parties' Settlement Agreement is fair and reasonable and should be preliminarily approved.

Respectfully submitted,

Matthew D. Carlson
(State Bar No. 5802681)
LAW OFFICE OF MATTHEW D.
  CARLSON
3959 N. Buffalo Road, Suite 29
Orchard Park, NY 14127
Telephone: (716) 242-1234
mdcarlson@mdcarlsonlaw.com

Attorney for Plaintiff

Dated:  June 23, 2023