# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF NEW YORK

# BINGHAMTON DIVISION

| | |
|---|---|
| DAVID POTTER, on behalf of himself and others similarly situated, | : : : Civil Action No.: : |
| Plaintiff, | : 3:22-cv-00869-TJM-ML |
| v. | : : |
| TIOGA DOWNS RACETRACK, LLC, | : : |
| Defendant. | : : |

## DECLARATION OF MATTHEW D. CARLSON IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

I, Matthew D. Carlson, declare:

1.    I am an attorney licensed to practice in this Court and am counsel for Plaintiff. I have

personal knowledge of the facts set forth herein. If called as a witness, I could and would

competently testify thereto.

2.    Attached hereto as **Exhibit 1** is a true and correct copy of the parties' Settlement

Agreement and Exhibits thereto.

## FACTUAL BACKGROUND

**A.    Litigation History**

3.    On August 23, 2022, Plaintiff filed his original Complaint against TD. Dkt. No. 1. On

September 30, 2022, Plaintiff filed a First Amended Complaint ("1AC") as a matter of

right. Dkt. No. 11. Thereafter, Plaintiff filed the operative Second Amended Complaint

("2AC"). Dkt. No. 18. Plaintiff asserts claims under New York law for failure to pay

minimum wage and penalties relating thereto arising from TD's implementation of a tip

credit after its reclassification of dealers from New York's Miscellaneous Wage Order

("MWO") to New York's Hospitality Industry Wage Order ("HIWO"). Dkt. No. 18 at ¶¶

1-5. Specifically, Plaintiff alleges that TD illegally applied the HIWO tip credit to its

minimum wage obligation because TD improperly reclassified dealers under the HIWO

or, alternatively, because TD allegedly did not properly notify dealers of their

reclassification or new tip credit claimed by TD under the HIWO. Dkt. No. 18 at ¶¶ 12-

26. Plaintiff also asserts overtime claims under New York and federal law arising from

the reclassification as well as TD's alleged failure to include tips in its calculation of

dealers' rates of pay and wage statement and wage notice penalties arising therefrom.

Dkt. No. 18. at ¶¶ 23, 27. TD answered Plaintiff's operative Complaint.; Dkt. No. 19. [1]

**B.    Discovery**

4.    Following the Initial Case Management Conference, the parties began the process of

exchanging written discovery. To start, Plaintiff propounded requests for fifteen

categories of documents and eighteen interrogatories. TD provided written responses to

each, as well as a 3,139-page document production including, for example, a sampling of

wage statements, job descriptions, and internal wage change documentation.  I personally

reviewed and analyzed every document in TD's production. In connection with

mediation, TD also provided data and information necessary to reasonably calculate

potential damages and penalties (in addition to wage statements) including, *inter alia*, (1)

the number of dealers during the relevant period for minimum wage and overtime claims;

(2) dealers' hours worked during the period in which Plaintiff contends TD improperly

applied a tip credit under New York law; and (3) dealers' overtime hours worked during

the relevant period for overtime claims.  Using this data and reasonable extrapolations

therefrom, as discussed further herein, I was able to assign realistic dollar values to each

claim in light of the provided data as well as the legal and factual risks associated with

each claim. *See also* ¶¶ 8-50, *infra*.

5.    I also considered additional information and legal arguments that informed my analysis

of claims, most notably including (1) argument and authority that, if adopted by the

Court, would have significantly reduced dealers' potential minimum wage damages; (2)

argument and authority that suggests TD may have been able to moot dealers' modestly

---

[1]    On February 25, 2021, Plaintiff filed a complaint with the New York Department of
Labor concerning his alleged under the HIWO. On March 16, 2022, the Department of Labor
ruled in TD's favor.

valued federal law claims, potentially resulting in Plaintiff's case being dismissed from

federal court and re-filed in state court – where courts have held that significant penalties

and liquidated damages would not be recoverable on a classwide basis, *see* CPLR 901(b);

and (3) authority that creates significant hurdles to establishing standing to recover

statutory penalties in federal court. *See* ¶¶ 17-23, 34-44, *infra*.

6.      TD propounded to Plaintiff requests for ten categories of documents. In response,

Plaintiff produced 1,579 pages of documents, including his previously filed and rejected

complaint with the New York Department of Labor and communications with

Department of Labor representatives, numerous communications with Plaintiff's union

and elected officials, as well as all of his paystubs. Plaintiff's counsel also made a

Freedom of Information of Request to the New York Department of Labor and received

and produced a "Labor Standards' Field Investigator's Manual" that discussed, *inter alia*,

definitions and examples pertaining to the hospitality industry. I personally reviewed and

analyzed every document in Plaintiff's production.

**C.      Mediation**

7.      In or around late October 2023, in accordance with the Court's Order referring the case to

mandatory mediation, the parties engaged Krista Gottlieb as mediator. As set forth in Ms.

Gottlieb's Mediator Biography, she has significant experience in complex employment

matters such as this one.[2] Plaintiff submitted a substantial mediation brief to the Mediator

and to TD's counsel, discussing numerous issues in the case pertaining to class

certification, liability, damages, penalties, and procedural matters. TD's counsel also

exchanged numerous factual and legal arguments, and thereafter counsel for the parties

---

[2]      *See* https://www.nywd.uscourts.gov/sites/nywd/files/ Buffalo%20Mediator%
20Biographies% 207.21.20.pdf.

engaged in a robust dialogue concerning the many complex procedural and substantive disputes in the case.  With data and documents produced in formal and informal discovery, and a thorough understanding of the parties' respective factual and legal positions, I was able thoroughly evaluate all matters pertaining to liability, class certification, damages, penalties, and procedural matters. *See* ¶¶ 8-50, *infra*. With the Mediator's input and guidance, the parties made substantial progress in understanding each other's legal and factual arguments in advance of mediation, leading to a productive and hard-fought mediation and executed term sheet. In the several months following mediation, counsel engaged in intensive negotiations regarding the details of the settlement, resulting in the proposed Settlement Agreement.

## VALUATION OF CLAIMS

8.     Using data, information, and documents provided by TD, documents and information provided by Plaintiff, as well as my significant experience litigating and settling wage and hour class actions (*see* ¶¶ 57-64, *infra*), I have made the following approximate valuations and assessments of claims at issue.[3] As set forth herein, I have a thorough understanding of the many complex procedural and substantive issues implicated by this case.

### Failure to Pay Minimum Wage (12 NYCCR § 142 (MWO) or § 146 (HIWO), N.Y.L.L. § 650, *et seq.*, N.Y.L.L. § 198(1-a))

9.     The Minimum Wage Act, N.Y.L.L. § 650, *et seq.*, and specifically N.Y.L.L. § 655-656, delegated authority to the New York State Commissioner of Labor to issues regulations

---

[3]     The release period under the settlement ends on January 4, 2023 – a point I negotiated in place of an open-ended approval-based release period as is typical in class actions. As such, claims have been approximately valued during the relevant period(s) through the release date. Any claims arising thereafter are not impacted by the settlement.

governing minimum wage. Pursuant to this authority, the Commissioner promulgated 12 NYCCR § 142 (the MWO) which states, in relevant part, that an employee must be paid a minimum wage for all hours worked. Similarly, the Commissioner promulgated 12 NYCCR § 146 (the HIWO) which states, in relevant part, that employees covered by the HIWO are subject to a minimum hourly wage and tip credit and sets forth the requirements an employer must meet to apply the tip credit to its minimum wage obligations. N.Y.L.L. § 663 provides that employees may bring a civil action for any underpayment of wages, including minimum, to which he or she is entitled under the Minimum Wage Act and attendant regulations, including 12 NYCCR §§ 142 and 146. Similarly, N.Y.L.L. § 198(1-a) provides that employees may recover the full amount of any underpayment of wages in a court action.[4]

10.     Plaintiff has asserted – and discovery has confirmed – that TD reclassified dealers from their original classification under the MWO to classification under the HIWO at the end of December 2020. At that time, TD also began taking a tip credit pursuant to the HIWO, rather than the MWO, towards its minimum wage obligations. Plaintiff claims that TD was not permitted to use the HIWO tip credit upon reclassification for two reasons: (1) because TD allegedly failed to notify dealers of the reclassification and attendant use of the HIWO tip credit; and (2) because dealers the HIWO reclassification was improper for the dealer job position.

11.     With respect to the first theory of liability, Plaintiff learned in discovery that dealers did not receive individualized formal notices of their reclassification and attendant use of the HIWO tip credit. *See*, *e.g.*, *Hicks v. T.L. Cannon Corp.*, 35 F. Supp. 3d 329, 346

---

[4]     Plaintiff did not assert a minimum wage claim pursuant to the FLSA because dealers have been paid more than federal minimum wage at all relevant times.

(W.D.N.Y. 2014) (requiring written notice for employer to use tip credit); *see also* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.2(b). However, in an Opinion Letter, the New York Department of Labor has disagreed with the *Hicks* decision, opining that an employer's failure to provide written notice of the use of a tip credit does *not* preclude the employer from utilizing the tip credit towards its minimum wage obligations. While one court has deferred to this Opinion Letter, *Carvente-Avila v. Chaya Mushkah Rest. Corp.*, 2016 WL 3221141, at *2 (S.D.N.Y. Mar. 1, 2016), the majority view is that this Opinion is not entitled to deference and/or can be distinguished where, as Plaintiff claims here, dealers were not aware of how their employer applied a tip credit. *Sprague v. T.C. Inn*, 2021 WL 3617705, at *6-7 (N.D.N.Y. Aug. 16, 2021) (citing cases). However, TD also contended that dealers were notified of their reclassification under the HIWO by use of a bulletin board on the premises, and via conversations between TD management and the dealers' union. *But see id.* ("[e]mployers cannot claim a tip credit by hanging posters or giving verbal notice."). And while Plaintiff was generally aware of his reclassification, his understanding of how TD utilized the HIWO tip credit was less clear. *See Sprague*, 2021 WL 3617705 at *7.

12.    With respect to the second theory of liability, Plaintiff was prepared to litigate the significance of the Department of Labor's pre-lawsuit ruling rejecting Plaintiff's complaint that he had been misclassified under the HIWO and should have remained classified under the MWO. While the ruling had little in the way of reasoning and apparently relied on a conclusory argument by a TD representative, the Department's decision directly addressed the reclassification issue. *Murphy v. Lajaunie*, 2016 WL 1192689, at *5 (S.D.N.Y. Mar. 22, 2016) ("DOL interpretations of NYLL elaborated in

opinion letters are entitled to at least some deference, so long as they are not irrational or unreasonable).

13.     If Plaintiff was correct on either of his reclassification arguments, dealers would be entitled to damages. TD's records show that dealers worked a total of 105,897 regular hours during the period from reclassification (12/30/20) through December 31, 2021, and a total of approximately 130,049 regular hours during the period from January 1, 2022 through the release date (January 4, 2023). In 2021, the minimum wage was $12.50, and the cash wage TD paid to dealers (*i.e.*, the amount it paid dealers without application of the tip credit, as Plaintiff contends TD was not permitted to do) was $10.40. Thus, in 2021, Class Members' aggregate damages amounted to approximately $222,384 ($2.10 x 105,897). In 2022, the minimum wage was $13.20, and the cash wage TD paid to dealers (*i.e.*, the amount it paid dealers without application of the tip credit, as Plaintiff contends TD was not permitted to do) was $11.00. Thus, in 2022, Class Members' aggregate damages amounted to approximately $286,108 ($2.20 x 130,049). I therefore estimate that total minimum wage damages for dealers arising from their reclassification would be approximately $508,492, if Plaintiff were to prevail on the merits.

14.     In the discovery process, it also became apparent that dealers may have minimum wage claims associated with TD's alleged failure to adjust its cash wage pursuant to the June 30, 2020 decrease in the tip credit under the MWO. This aspect of the minimum wage claim is unconnected with dealers' reclassification, and because dealers were furloughed due to Covid until October 2020, it has nominal value. According to TD's data, dealers worked a total of approximately 13,000 regular hours during short time period. Plaintiff contends that TD's alleged failure to increase its cash wage with the corresponding decrease in the available MWO tip credit led to an underpayment of minimum wage of

approximately $1.45 per hour. Thus, dealers' aggregate minimum wage damages would amount to approximately $18,850 for this time period.

15. Overall, I calculate that maximum damages on the minimum wage claim would be approximately $527,342.

16. There was, however, an additional concern with this claim relating to damages. In connection with mediation, TD provided data showing that dealers' aggregate minimum wage damages were substantially less than calculated because a significant number of dealers worked in positions other than dealer, in which positions they were paid above the minimum wage. TD would have argued that it should be permitted to use those payments to meet its minimum wage obligations to dealers in their capacities as dealers. *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 493 (2d Cir. 1960) (rejecting the argument that "payments for certain hours in excess of the statutory minimum cannot be reallocated to make up for deficiencies in payments made for other hours during the week"); *see also Marshall v. Sam Dell's Dodge Corp*., 451 F. Supp. 294, 302 (N.D.N.Y. 1978) ("the work week is the applicable time period for calculating the minimum wage."). However, Plaintiff would have argued this would amount to impermissible "reverse engineering" of compliance with minimum wage laws. *United States Dep't of Lab. v. Fire & Safety Investigation Consulting Servs., LLC*, 915 F.3d 277, 286 (4th Cir. 2019) (employers are not permitted to "invent payment schemes…and then post-hoc attempt to reverse engineer compliance with the FLSA"); *see also Jemine v. Dennis*, 901 F. Supp. 2d 365, 375 (E.D.N.Y. 2012) ("[The New York Labor Law mirrors the FLSA in most aspects."). Nonetheless, if TD was correct – assuming Plaintiff prevailed on his substantive theories of liability – TD's data shows that the value of this

claim would have decreased from **$527,342** to **$363,977**. Of course, this claim could be worth **$0** if TD was correct on the merits.

**Liquidated Damages on Minimum Wage Claim (N.Y.L.L. § 198(1-a))**

17.    Liquidated damages amounting to 100 percent of unpaid wages must be awarded for a minimum wage claim under New York law unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law. N.Y.L.L. § 198(1-a).

18.    While liquidated damages are the norm in NYLL cases, *see Hernandez v. Jrpac Inc.*, 2016 WL 3248493, at *34 (S.D.N.Y. June 9, 2016), the New York Department Labor has issued two opinions that support TD's position that it has not committed minimum wage violations with respect to reclassification. On the other hand, courts have rejected the one of these opinions as discussed above, and Plaintiff would have argued that the other opinion regarding Plaintiff's reclassification should similarly not be given deference.

19.    Ultimately – *if* the case were to remain in federal court (a critical caveat discussed below) – Plaintiff may have been able to recover liquidated damages up to $527,340 (or $363,977, if TD were to prevail on its reallocation argument).

20.    However, as suggested, there was yet another hurdle for dealers pertaining to liquidated damages (and, as discussed later, NYLL penalties): TD may have been able to successfully maneuver the case out of federal court by compensating dealers for their alleged federal overtime claims, thereby essentially mooting the federal law claims of the entire proposed collective. *See Hepler v. Abercrombie & Fitch Co.*, 607 F. App'x 91, 92 (2d Cir. 2015) ("Just as a defendant may end the litigation by allowing default judgment, a defendant may always end the litigation by offering judgment for all the relief that is sought."). In such a circumstance, while TD would have to fully compensate dealers for

their overtime claims – a very modest amount, as discussed below – Plaintiff would have been forced to re-file the case in state court, where liquidated damages have been found to be unrecoverable on a classwide basis. *See Picard v. Bigsbee Enterprises, Inc.*, 44 Misc. 3d 1214(A), 997 N.Y.S.2d 669 (N.Y. Sup. 2014) ("liquidated damages available under Labor Law § 198(1–a) represent a "penalty" within the meaning of CPLR 901(b)"). This potential maneuver was a realistic outcome in which case dealers would likely not have recovered any liquidated damages on the minimum wage claim.

21.    On the other hand, Plaintiff would have argued that such a tactic would prevent him from moving for class certification on multiple claims, which Plaintiff believes is not permitted under *Campbell–Ewald Company v. Gomez*, 136 S. Ct. 663 (2016); *see also Bais Yaakov of Spring Valley v. Graduation Source, LLC*, 167 F. Supp. 3d 582, 583 (S.D.N.Y. 2016). Plaintiff would also would have argued that the Court should not permit such an action pursuant to its authority to regulate communications with putative class members. *See In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 252 (S.D.N.Y. 2005).

22.    Plaintiff would have also argued that even if dealers' federal law claims were to become moot over Plaintiff's objection, the unusual circumstances of the case should nonetheless counsel in favor of the Court exercising its discretion to retain jurisdiction, particularly if Plaintiff's individual federal law claims remained in controversy (*i.e.*, if he were to decline the payment). *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("the doctrine of pendent jurisdiction thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values."). However, TD would have a strong argument that this Court should decline to exercise supplemental jurisdiction over remaining state law claims particularly given the early stages of the case – even if

Plaintiff Potter were to reject payment. *Chenensky v. New York Life Ins. Co.*, 942 F. Supp. 2d 388, 391 (S.D.N.Y. 2013) ("Ordinarily, when a plaintiff's federal claims are dismissed before trial, the state law claims should be dismissed as well.") (quoting *Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir.2010)) (cleaned up); *see also De La Riva v. Houlihan Smith & Co.*, 848 F. Supp. 2d 887, 890 (N.D. Ill. 2012) (declining to exercise supplemental jurisdiction over state law claims where only plaintiffs asserted only individual, not collective, FLSA claims).

23.   Accordingly, liquidated damages on dealers' minimum wage could have realistically ranged from **$527,340 to $363,977 to $0.**

### Failure to Pay Overtime Wages: FLSA (29 U.S.C. § 207)

24.   The FLSA provides that an employee must be paid wages equal to one and one-half (1.5) times the employee's regular rate of pay for all hours worked in excess of 40 per week.

25.   Plaintiff contends that TD had a practice of calculating dealers' overtime pay without factoring in gratuities, which, if true, runs afoul of the FLSA. *See* 29 C.F.R. § 531.60 ("a tipped employee's regular rate of pay includes the amount of tip credit taken by the employer."); *Inclan v. New York Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 498–99 (S.D.N.Y. 2015) ("under both federal and state law, it is a violation of the overtime requirement for an employer to subtract the tip credit first and then multiply the reduced rate by one and one half.") (cleaned up).

26.   Plaintiff contends that the relevant statutory period reaches back three years – here, August 23, 2019 to the release date of January 4, 2023 – because TD's failure to pay overtime wages was "willful" within the meaning of the FLSA. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (FLSA violation is willful if the "employer either knew or showed reckless disregard for the matter of whether its conduct was

prohibited by the statute."). TD would, of course, dispute this argument. *See Hernandez*, 2016 WL 3248493, at \*31 (no willfulness where evidence did not show recklessness beyond FLSA violations themselves, even where defendants submitted fabricated evidence and provided incredible testimony).

27.    For purposes of determining the maximum value of this claim, TD's data shows that dealers worked approximately 7,011 aggregate overtime hours from August 23, 2019 through December 31, 2022. The average difference between the overtime rate owed (*i.e.*, including gratuities) and the overtime rate actually paid was approximately $2.40 during this same time. Accordingly, dealers' FLSA overtime claim would have been worth approximately **$16,826.40** if they prevailed on the merits.

### Liquidated Damages on Overtime Wage Claim: FLSA (29 U.S.C. § 216)

28.    Liquidated damages amounting to 100 percent of unpaid wages must be awarded for an overtime wage claim under the FLSA unless an employer can show that the violation was in good faith and that it had reasonable grounds for believing there was no violation. 29 U.S.C. § 260. "[D]ouble damages [are] the norm and single damages the exception." *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008).

29.    Under the relevant time period for the FLSA overtime claim discussed above, a liquidated damages award under the FLSA would double the single damages in the amount of an additional $**16,826.40**. Further, since TD would have had to pay dealers approximately this amount in any attempt to moot dealers' FLSA claims, the case potentially being forced into state court has no bearing on the liquidated damages valuation.

//

//

**Failure to Pay Overtime Wages: NYLL (2 NYCCR § 142 (MWO) or § 146 (HIWO),**

**N.Y.L.L. § 650, *et seq.*, N.Y.L.L. § 198(1-a))**

30.    The Minimum Wage Act, N.Y.L.L. § 650, *et seq.*, and specifically N.Y.L.L. §§ 655-656, delegated authority to the New York State Commissioner of Labor to issues regulations governing not just minimum wage, but also overtime pay. Pursuant to this authority, the Commissioner promulgated 12 NYCCR § 142 (the MWO) which states, in relevant part, that an employee must be paid wages equal to one and one-half (1.5) times the employee's regular rate of pay for all hours worked in excess of 40 per week. The HIWO, 12 NYCCR § 146, similarly provides that an employee must be paid wages equal to one and one-half (1.5) times the employee's regular rate of pay for all hours worked in excess of 40 per week, and sets forth the requirements an employer must meet to apply a tip credit to its overtime obligations. N.Y.L.L. § 663 provides that employees may bring a civil action for any underpayment of wages, including overtime wages, to which he or she is entitled under the Minimum Wage Act and attendant regulations, including 12 NYCCR § 142 and 146. Similarly, N.Y.L.L. § 198(1-a) provides that employees may recover the full amount of any underpayment of wages in a court action.

31.    Plaintiff asserts that TD failed to properly calculate dealers' overtime rates of pay under both the NYLL for the same reason that it did so under the FLSA – because it excluded gratuities from the calculation. *See* 12 NYCRR § 146–1.4 ("It is a violation of the overtime requirement for an employer to subtract the tip credit first and then multiply the reduced rate by one and one half."); *see also Inclan, supra.*

32.    Notably, a NYLL claim for overtime reaches back six years, rather than the maximum three-year limitations period under the FLSA. Accordingly, dealers who worked from November 10, 2016 (the beginning of the NYLL time period) and August 23, 2019 (the

beginning of the FLSA time period) would recover under this claim. Dealers would not be permitted to recover single damages under both the NYLL and FLSA to the extent the relevant time periods overlap. *E.g.*, *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 505 (S.D.N.Y. 2017), *aff'd*, 752 F. App'x 33 (2d Cir. 2018).

33. According to TD's data, dealers worked approximately 1,706 aggregate overtime hours November 10, 2016 through August 23, 2019. The average difference between the overtime rate owed (*i.e.*, including gratuities) and the overtime rate actually paid was approximately $2.16 during this same time. Accordingly, I value the NYLL overtime claim at approximately **$3,684.96**.

### Liquidated Damages on Overtime Claim: NYLL (N.Y.L.L. § 198(1-a))

34. Liquidated damages amounting to 100 percent of unpaid wages are awarded for an overtime wage claim under New York law unless the employer proves a good faith basis to believe that its underpayment of wages complied with the law. N.Y.L.L. § 198(1-a); *Zubair v. EnTech Eng'g P.C.*, 900 F. Supp. 2d 355, 360 (S.D.N.Y. 2012) (after 2009 amendments, "the NY[]LL's liquidated damages provision now mimics the FLSA.").

35. Under the relevant time period for the NYLL overtime claim discussed above, a liquidated damages award under the NYLL would double the single damages amount of **$3,684.96**. However, dealers would likely be entitled **$0** in liquidated damages if the case were forced into state court pursuant to CPLR 901(b).

### Failure to Provide Accurate Wage Statements (N.Y.L.L. § 195(3))

36. N.Y.L.L. § 195(3) provides that "[f]or all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular

14

hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked."

37. Plaintiff contends that because dealers' wage statements both (a) did not show their correct overtime rates of pay; and (b) expressly show allowances claimed as part of the minimum wage, TD is liable for penalties amounting to $50 for each workday that wage statement violations occurred, not to exceed a total of five thousand dollars. A penalty would attach with respect to all dealers during the six-year New York limitations period by virtue of overtime claims, tip credit claims, or both, the maximum value of this claim would be approximately $1,500,000 (approximately 300 dealers times $5,000 statutory maximum).[5]

38. However, there is a significant body of recent caselaw that has held that wage statement penalties (and wage notice penalties, discussed *infra*) cannot be recovered in federal court simply because a violation of the statute has occurred, but rather only upon a showing of "actual and concrete" injury following the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).[6] On the other hand, Plaintiff would argue that he was routinely provided with inaccurate and misleading information, which prevented him and other dealers from pursuing the full amount of compensation to which they were entitled. *See Metcalf v. TransPerfect Translations Int'l, Inc.*, 2023 WL 2674743, at *6

---

[5]     Most TD dealers are long-term employees.

[6]     *See Saaba v. Deshi Senior Ctr., LLC*, 2023 WL 3819384, at *2 (E.D.N.Y. June 5, 2023); *Ramirez v. Urion Constr. LLC*, 2023 WL 3570639, at *8 (S.D.N.Y. May 19, 2023); *Quieju v. La Jugueria Inc.*, 2023 WL 3073518, at *2–3 (E.D.N.Y. Apr. 25, 2023); *Ramirez v. Sake II Japanese Rest., Inc.*, 2023 WL 3354881, at *9 (S.D.N.Y. Apr. 24, 2023); *Guthrie v. Rainbow Fencing Inc.*, 2023 WL 2206568, at *4 (E.D.N.Y. Feb. 24, 2023); *Veintimilla v. Sunny Builders NY*, 2023 WL 2969385, at *11–12 (E.D.N.Y. Feb. 17, 2023); *Neor v. Acacia Network, Inc.*, 2023 WL 1797267, at *4 (S.D.N.Y. Feb. 7, 2023); *Sims v. Crown Waste Corp.*, 2023 WL 363070, at *2 (E.D.N.Y. Jan. 23, 2023); *Sevilla v. House of Salads One LLC*, 2022 WL 954740, at *7 (E.D.N.Y. Mar. 30, 2022); *Wang v. XBB, Inc.*, 2022 WL 912592, at *13 (E.D.N.Y. Mar. 29, 2022); *Francisco v. NY Tex Care, Inc.*, 2022 WL 900603, at *7 (E.D.N.Y. Mar. 28, 2022).

(S.D.N.Y. Mar. 29, 2023). While it is impossible to predict how this Court would decide

the matter, it is an issue that would be heavily contested and could result in no recovery.

Moreover, if the case was moved into state court, this claim would also be worth nothing

because penalties would not be recoverable on a classwide basis under CPLR 901(b).

39.    Accordingly, the value of this claim would realistically be either **$1,500,000** or **$0**.

### Failure to Provide Accurate Wage Notices (N.Y.L.L. § 195(1))

40.    N.Y.L.L. § 195(1) requires every employer to provide his or her employees, in writing in

English and in the language identified by each employee as the primary language of such

employee, at the time of hiring, a notice containing the following information:  the rate or

rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece,

commission, or other;  allowances, if any, claimed as part of the minimum wage,

including tip, meal, or lodging allowances;  the regular pay day designated by the

employer in accordance with section one hundred ninety-one of this article;  the name of

the employer;  any "doing business as" names used by the employer;  the physical address

of the employer's main office or principal place of business, and a mailing address if

different;  the telephone number of the employer;  plus such other information as the

commissioner deems material and necessary.   Each time the employer provides such

notice to an employee, the employer shall obtain from the employee a signed and dated

written acknowledgement, in English and in the primary language of the employee, of

receipt of this notice, which the employer shall preserve and maintain for six years.

Such acknowledgement shall include an affirmation by the employee that the employee

accurately identified his or her primary language to the employer, and that the notice

provided by the employer to such employee pursuant to this subdivision was in the

language so identified or otherwise complied with paragraph (c) of this subdivision, and

shall conform to any additional requirements established by the commissioner with regard to content and form. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the notice must state the regular hourly rate and overtime rate of pay. Further, N.Y.L.L. § 195(2) requires employers to notify employees in writing of any changes to the information set forth above unless such changes are reflected on employees' wage statements.

41.    Here, Plaintiff contends that he and other dealers received wage notices that incorrectly stated their overtime rates of pay. *See Marin v. Apple-Metro, Inc.*, 2017 WL 4950009, at *18 (E.D.N.Y. Oct. 4, 2017). In such a circumstance, the 300 dealers at issue could be entitled to a penalty of $50 per workday, not to exceed $5,000, for a total of $1,500,000.[7]

42.    However, the hurdles pertaining to Article III standing applicable to wage statement penalties apply with equal force to wage notice penalties. *See, e.g.*, *Neor*, 2023 WL 1797267, at *4 (dismissing WTPA claims where the complaint did not "allege any harm stemming from a lack of accurate wage notices or statements"); *but see Beh v. Cmty. Care Companions Inc.*, 2022 WL 5039391, at *7 (W.D.N.Y. Sept. 29, 2022) (commenting that "lack of knowledge about the rates or conditions of [] pay" could constitute concrete harm arising from incorrect wage notices).

43.    Moreover, assuming Plaintiff was able to overcome the standing hurdle, if the case were

---

[7]    To the extent Plaintiff has asserted that dealers employed at the time of reclassification were entitled to amended wage notices upon reclassification pursuant to NYLL 195(2), district courts have held that there is no private right of action arising from an employer's failure to notify employees of a change in their pay. *Dowd v. 6675 Transit Rd LLC*, 2017 WL 5713956, at *4 (W.D.N.Y. Oct. 23, 2017) (no private right of action where defendants "failed to provide notification to employees whenever their wages changed"); *Chan v. Big Geyser, Inc.*, 2018 WL 4168967, at *9 (S.D.N.Y. Aug. 30, 2018) (same); *Baquedano v. Maldonado*, 2022 WL 2161192, at *1 (E.D.N.Y. June 15, 2022) (same).

forced into state court, dealers would recover nothing on this claim because of the bar on recovery of classwide penalties under CPLR 901(b).

44.    Accordingly, the value of this claim would realistically be either **$1,500,000** or **$0**.

### Interest on NYLL claims (CPLR § 5004)

45.    The NYLL permits plaintiffs to recover both liquidated damages and pre-judgment interest. *Reyes v. Tacos El Gallo Giro Corp.*, 2022 WL 940504, at *12 (E.D.N.Y. Jan. 25, 2022). CPLR section 5004 provides that interest accrues at a simple rate of nine per centum per annum. In wage and hour litigation, courts have generally used the midpoint of plaintiff's employment within the limitations period. *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 515 (S.D.N.Y. 2017), *aff'd*, 752 F. App'x 33 (2d Cir. 2018). Additionally, interest accrues only on actual damages under the NYLL, not liquidated damages. *Id.*[8]

46.    Here, the midpoint of Plaintiff's employment during the limitations period (beginning on November 10, 2016 and ending upon his separation from TD on September 10, 2022 is October 11, 2019. Nine percent per annum on compensatory damages for minimum wage and overtime claims under the NYLL would apply as follows:

|  | NYLL Minimum Wage Damages | NYLL Overtime Damages | Interest rate | Total interest owed |
|---|---|---|---|---|
| Full NYLL minimum wage damages + NYLL overtime damages | $527,342 | $3,685 | 9% per annum | $527,342 + $3,685 = $531,027 x .09/365 x 2,973 days = $389,279 |

---

[8]    I note that while employees are not able to recover duplicative single or liquidated damages under the FLSA and NYLL, employees are permitted to recover both liquidated damages and interest under the NYLL. *Sanchez v. Ms. Wine Shop Inc.*, 2022 WL 17368867, at *13 (E.D.N.Y. Nov. 30, 2022). However, liquidated damages pursuant to dealers' FLSA overtime claim are more valuable than interest on dealers' coextensive NYLL overtime claims. As such, these calculations apply interest only on NYLL overtime damages to the extent such damages are outside the relevant time period for FLSA overtime damages.

| NYLL minimum wage damages limited by reallocation + NYLL overtime damages | $363,977 | $3,685 | 9% per annum | $363,977 + $3,685 = $367,662 x .09/365 x 2,973 days = $269,521.43 |
|---|---|---|---|---|
| TD prevails on minimum wage claim + NYLL overtime damages | $0 | $3,685 | 9% per annum | $3,685 x .09/365 x 2,973 days = $2,701.36 |

47.    Accordingly, an award of interest could range from **$389,279** to **$269,521.43**, to **$2,701.36**, depending on potential outcomes in the case.

### OTHER RISKS OF FURTHER LITIGATION

48.    The above valuation of claims documents specific risks of further litigation with respect to those claims. However, there are other broader major risks including, for example, the risk that TD might prevail on a contested motion for class certification and/or conditional certification, and the risk inherent in class action litigation (and litigation in general) that TD might successfully appeal any other adverse orders.

### VALUATION: CONCLUSION

49.    Based on the above analysis, below is the total realistic exposure to TD in this case, depending on various scenarios discussed herein:[9]

| Scenario | Minimum Wage Damages | Liquidated Damages on Minimum Wage Claim | Overtime Damages (FLSA) | Liquidated Damages on FLSA Overtime Claim | Additional Overtime Damages (NYLL) | Liquidated Damages on NYLL Overtime Claim | Wage Statement Penalties | Wage Notice Penalties | Interest on NYLL claims | Total | Percentage of Recovery Represented by Settlement |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Case remains in federal court; full amount of minimum wage damages awarded, full wage statement and notice penalties awarded | $527,342 | $527,340 | $16,826 | $16,826 | $3,685 | $3,685 | $1,500,000 | $1,500,000 | $389,279 | $4,484,986 | 19% |

---

[9]    While potential attorneys' fees are speculative and therefore not able to realistically valued, interest can be estimated. *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 174 (S.D.N.Y. 2015) (evaluating total possible recovery exclusive of potential attorneys' fees).

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Case remains in federal court; full amount of minimum wage damages awarded, no wage statement or notice penalties awarded | $527,342 | $527,340 | $16,826 | $16,826 | $3,685 | $3,685 | $0 | $0 | $389,279 | $1,484,986 | 57% |
| Case remains in federal court; minimum wage damages limited by reallocation, full wage statement and penalties awarded | $363,977 | $363,977 | $16,826 | 16,826 | $3,685 | $3,685 | $1,500,000 | $1,500,000 | $269,521 | $4,038,498 | 21% |
| Case remains in federal court; minimum wage damages limited by reallocation, no wage statement or notice penalties awarded | $363,977 | $363,977 | $16,826 | 16,826 | $3,685 | $3,685 | $0 | $0 | $269,421 | $1,132,954 | 82% |
| Case remains in federal court; TD prevails on minimum wage claims, full wage statement and notice penalties awarded | $0 | $0 | $16,826 | 16,826 | $3,685 | $3,685 | $1,500,000 | $1,500,000 | $2,701.36 | $3,043,724 | 28% |
| Case remains in federal court; TD prevails on minimum wage claims, no wage statement or notice penalties awarded | $0 | $0 | $16,826 | 16,826 | $3,685 | $3,685 | $0 | $0 | $2,701.36 | $43,724 | 1,944% |
| Case dismissed and re-filed in state court; full amount of minimum wage damages awarded | $527,342 | $0 | $16,826* | $16,826* | $3,685 | $0 | $0 | $0 | $389,279 | $953,959 | 89% |
| Case dismissed and re-filed in state court; minimum wage damages limited by reallocation | $363,977 | $0 | $16,826* | $16,826* | $3,685 | $0 | $0 | $0 | $269,521.43 | $670,836 | 127% |
| Case dismissed and re-filed in state court; TD prevails on minimum wage claim | $0 | $0 | $16,826* | $16,826* | $3,685 | $0 | $0 | $0 | $2,701.36 | $40,039 | 2,123% |

\* Potential unilateral payment to collective to moot FLSA damages and liquidated damages claims during relevant time period.

50.     Regardless of what could be considered the "most likely" outcome, this is an excellent settlement for dealers, particularly considering the serious issues and risks related to

liability, damages and class certification, and also considering the case law regarding fair, reasonable, and adequate settlements.

## PLAN OF ALLOCATION

51.    The plan of allocation in this case has been carefully tailored to track Plaintiff's claims. As a preliminary matter, the value of dealers' per-hour overtime and minimum wage potential damages are roughly similar – approximately two dollars per hour. However, I consider dealers' overtime claims to have fewer factual and legal hurdles than their minimum wage claims, as described above. As such, dealers are awarded one point per overtime hour worked during the relevant overtime period, and .75 points per regular hour worked during the approximately 2.5-year minimum wage period during which the minimum wage claim is at issue. Additionally, wage statement penalties, wage notice penalties, liquidated damages, and interest apply similarly (if at all) to all dealers, and as such no additional points are awarded for these claims and/or remedies. I also note that the plan properly differentiates and allocates overtime claim points based on FLSA and NYLL damages, depending on when the dealer worked.

## MISCELLANEOUS

52.    I am informed that there are approximately 300 Class and/or Collective Members.

## SETTLEMENT ADMINISTRATOR

53.    I obtained settlement administration bids from Simpluris, Inc.  and CAC Services Group, LLC ("CAC"). I have worked with both administrators, each of which are highly respected in their field, and have had excellent experiences with them.

54.    Ultimately, I proposed, and defense counsel agreed to, CAC as Settlement Administrator for this case. CAC's bid was less expensive, its proposal was comprehensive and

thorough, its terms and conditions were clear, and I am comfortable with the quality of CAC's work.

55.    I have no financial or personal relationships with CAC or any of its employees.

### ATTORNEY EXPERIENCE

56.    I received my undergraduate degree from Yale University in 2005, and my J.D. from the University of San Francisco in 2010. I am currently the principal of the Law Office of Matthew D. Carlson. I also worked for several years in an "Of Counsel" capacity with prominent plaintiff-side class and collective action firm Lichten & Liss-Riordan, P.C., and partnered with or worked for Lichten & Liss-Riordan on numerous wage and hour class and/or collective actions since late 2013. I have also partnered with other respected plaintiff-side class and collection action firms, including, for example, Blanchard & Walker and Tycko & Zavareei LLP.

57.    In September 2013, shortly after starting my first solo practice, Carlson Legal Services, I filed the second "gig economy" misclassification class action case in California, *Cotter v. Lyft, Inc.*, Case No. 3:13-cv-04065-VC (N.D. Cal.). Since then, I have worked extensively on all facets of various types of wage and hour class and/or collective action cases, including *Cotter*, *Reeb v. Alro Steel Corporation*, Case No. 2:21-CV-12545-SJM (E.D.M.I.);  Stonehocker *v. Kindred Healthcare Operating, LLC*, Case No. 4:19-cv-02494-YGR (N.D. Cal.); *O'Connor, et al. v. Uber Technologies, Inc.*, Case No. 3:13-cv-03826-EMC (N.D. Cal.); *Lawson v. GrubHub Inc.*, Case No. 3:15-cv-05128-JSC (N.D. Cal.); *Singer, et al. v. Postmates, Inc.*, Case No. 4:15-cv-01284-JSW (N.D. Cal.); *Marciano, et al. v. DoorDash, Inc.*, Case No. CGC-15-548101 (S.F. Sup. Ct.); *Lawson v. Jolt Delivery, LLC*, Case No. BC632935 (LA Sup. Ct.); *Sims v. Lugg, Inc.*, Case No. CGC-16-550654 (SF Sup. Ct.); *Quigley v. Eaze Solutions, Inc.*, No. CGC-16-550805

(S.F. Sup. Ct.); and *Levin v. Caviar, Inc.*, Case No. 3:15-cv-01285-EDL (N.D. Cal.);

*Robinson, et al. v. Ritz-Carlton Hotel Company*, Case No. CGC-15-546585 (S.F. Sup.

Ct.); *O'Grady v. Merchant Exchange Productions, Inc.*, Case No. CGC-15-547796 (S.F.

Sup. Ct.); *Conde v. 20/20 Communications, Inc., et al.*, Case No. 15-cv-04080-KAW

(N.D. Cal.); *Gill v. 314e Corporation*, Case. No. 4:17-cv-01062-JD (N.D. Cal.); *Colopy,

et al. v. Uber Technologies, Inc.*, Case No. CGC-16-549696 (S.F. Sup. Ct.); *Iglesias v.

Homejoy, Inc.*, Case No. 3:15-cv-01286-EMC (N.D. Cal.); *Hughes v. S.A.W.

Entertainment, LTD*, Case No. 4:16-cv-03371-LB (N.D. Cal.); *Mehraban v. Gold Club –

S.F. LLC*, 3:17-cv-5288-LB (N.D. Cal.); *Ziglar, et al. v. Express Messenger Systems,

Inc.*, Case No. 2:16-cv-02726-PHX-SRB (D. Az.); *Valencia v. Saucey, Inc.*, Case No.

BC649838 (L.A. Sup. Ct.); *Ortega v. The Spearmint Rhino Companies Worldwide, Inc.,

et al.*, Case No. 5:17-cv-00206-JGB-KK (C.D. Cal.); *Fagen, et al. v. Transworld Systems,

Inc.*, Case No. BC660039 (L.A. Sup. Ct.); *Washio Wage and Hour Cases*, Case No. CJC-

15-004857 (S.F. Sup. Ct.); and *Arce v. Valley Prune, LLC*, Case No. 12-cv-2772-JM

(E.D. Cal.).

58.     Prior to September 2013, I worked for the highly regarded San Francisco plaintiff-side

class and collective action firm Schneider Wallace, et al., and before that I worked as

employment counsel for plaintiff-side firm Hersh & Hersh, P.C. While employed by

those firms, I worked on a wide range of class, collective, and individual wage and hour

matters, including, for example, cases involving off the clock work, exemptions, missed

meal and rest breaks, associated penalties, and other wage and hour issues. *E.g.*, *Pablo, et

al. v. Servicemaster Global Holdings, Inc.*, Case No. 08-cv-03894-SI (N.D. Cal.); *Lopez

v. Marcus & Millichap Real Estate Investment Services, et al.*, Case. No. CGC-09-

493705 (S.F. Sup. Ct.); *Baricuatro v. Indus. Pers. & Mgmt. Servs., Inc., et al.* Case No.
11-cv-2777-KE (E.D. La.).

59.     My experience in wage and hour class and collective actions is comprehensive. In
numerous cases, including but not limited to the above cases, I have drafted complaints,
propounded and responded to written discovery, taken and defended depositions, made
and opposed procedural and substantive motions (including, for example, motions to
dismiss, motions for summary judgment, motions for class certification, motions
regarding arbitration provisions, motions *in limine*, and post-trial motions), assisted with
trial, participated in mediations and settlement conferences, prepared all settlement-
related papers and court submissions at all stages of the settlement approval process
(including defending the *Cotter* settlement on appeal by way of a successful motion for
summary affirmance), and worked on all components of settlement administration,
including acting as the primary attorney point of contact in classes ranging in size from
about 800 people to exceeding 200,000 people.

60.     The wage and hour cases I have worked on have required careful analysis of and
discovery concerning all manner of wage and hour-related issues including, for example,
issues concerning what constitutes "time worked," off the clock work, unpaid straight
time and overtime, meal and rest periods, minimum wage, reimbursement, issues relating
to gratuities and tip credits, assorted claims for penalties, and claim valuation. These
issues have been litigated in various contexts, including on Motions to Dismiss, Motions
for Summary Judgment, Motions for Class and/or Conditional Certification, Motions for
Settlement, at trial, and on appeal.

61.     I have had major roles in wage and hour class and/or collective settlements of various

sizes, including, for example, *Cotter* ($27 million), *O'Connor* ($100 million),[10] *Singer* ($8.75 million), *Marciano* ($5 million), *Stonehocker* ($1.995 million); *Levin* ($1.875 million), *Quigley* ($975,000), in addition to class and individual settlements in many of the other cases listed above.

62.     Several wage and hour settlements of which I have been a part during my career have been scrutinized to an unusual degree given their high-profile nature. Those processes have made me highly attuned to all aspects of class and collective settlements and I closely examine every settlement I negotiate for substantive and procedural fairness.

63.     In light of my experience, and specifically my experience litigating and resolving wage and hour class and collective actions, I strongly believe this settlement is an excellent result for dealers and should be approved.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 23, 2023 in Orchard Park, New York.

By: /s/ Matthew D. Carlson
Matthew D. Carlson

---

[10]     The initial *O'Connor* settlement was rejected by the District Court, and, after the Supreme Court's decision in *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018), which resulted in the exclusion of the vast majority of Uber drivers from the litigation, settled for $20 million. *See O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC, 2019 WL 4394401 (N.D. Cal. Sept. 13, 2019), *aff'd*, No. 19-17073, 2019 WL 7602362 (9th Cir. Dec. 20, 2019), *cert. denied sub nom. Mendel v. Uber Techs. Inc.*, No. 19-8075, 2020 WL 2621861 (U.S. May 26, 2020).

# EXHIBIT 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DAVID POTTER                                      :
on behalf of himself and all other similarly      :
situated persons,                                 :
                                                  :
                          Plaintiff,              :
                                                  :          CIV. NO. 3:22-cv-00869-TJM-ML
              v.                                  :
                                                  :
TIOGA DOWNS RACETRACK, LLC,                        :
                                                  :
                          Defendant.              :
------------------------------------------------------------X

## **SETTLEMENT AGREEMENT**

         This Settlement Agreement is entered into by and between Defendant, Plaintiff's counsel, Plaintiff, and the NYLL Class / FLSA Collective that Plaintiff purposes to represent.

**RECITALS**

         WHEREAS, on August 23, 2022, Plaintiff David Potter filed a Complaint against Defendant Tioga Downs Racetrack LLC in the United States District Court for the Northern District of New York in Civil Action Number 3:22-cv-00869;

         WHEREAS, on September 13, 2022, Plaintiff filed a First Amended Complaint in that Litigation, and on November 28, 2022, Plaintiff filed a Second Amended Complaint;

         WHEREAS, Plaintiff has asserted putative class claims under the New York Labor Law and putative collective claims under the Fair Labor Standards Act and has sought recovery of, among other things, wages, liquidated damages, interest, and attorneys' fees and costs;

         WHEREAS, on February 22, 2023, the Parties engaged in mediation before Krista Gottlieb, Esq., and executed a Memorandum of Understanding to memorialize their agreement as to the principal terms of a settlement, subject to the execution of a mutually acceptable settlement agreement;

         WHEREAS, Defendant has denied and continues to deny all of the allegations made by Plaintiffs in the Litigation (as hereinafter defined) and has denied and continues to deny that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation.  Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendant has agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation;

WHEREAS, Plaintiff and his counsel have analyzed and evaluated the merits of the claims made against Defendant in the Litigation, and the impact of this Agreement on Plaintiffs and the members of the putative NYLL Class and FLSA Collective;

WHEREAS, based upon their analysis and their evaluation of a number of factors, and recognizing the substantial risks of continued litigation with respect to certain claims, including the possibility that the Litigation, if not settled now, might result in a recovery that is less favorable to the putative NYLL Class and putative FLSA Collective, and that would not occur for several years, or at all, Plaintiff and his counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the putative NYLL Class and FLSA Collective.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

1. **DEFINITIONS**

The defined terms set forth herein shall have the meanings ascribed to them below.

1.1    **Agreement.**  "Agreement" shall mean this Settlement Agreement.

1.2    **Class/Collective Counsel.**  "Class/Collective Counsel" shall mean Matthew D. Carlson of the Law Office of Matthew D. Carlson.

1.3    **Class/Collective Data**.  Files containing the names, last known mailing addresses, social security numbers, Hours Worked, and Overtime Hours Worked during the NYLL Covered Period and the FLSA Covered Period for each NYLL Class Member and each Potential FLSA Collective Member, respectively, and any other data reasonably necessary to effectuate the Settlement.

1.4    **Court.**  "Court" shall mean the United States District Court for the Northern District of New York.

1.11    **Defendant.**  "Defendant" shall mean Tioga Downs Racetrack LLC.

1.5    **Defendant's Counsel.**  "Defendant's Counsel" shall mean Katherine McClung and Travis Talerico of Bond Schoeneck & King, PLLC.

1.6    **Effective Date**.  The Effective Date of this Agreement shall mean the later of (i) thirty-five (35) calendar days after the Court issued the Order Granting Final Approval of this Agreement, if no appeal of such order is pending, or (ii) upon the final disposition of any appeal that has the effect of affirming the Order Granting Final Approval in its entirety with no further opportunity for appeal.

1.7    **Escrow Account.** "Escrow Account" shall mean the FDIC insured interest-bearing account(s) created and controlled by the Settlement Administrator for the purposes of the receipt and payment of the settlement funds provided for herein.

1.8    **Fairness Hearing.** "Fairness Hearing" shall mean the hearing on the Motion for Judgment and Final Approval.

1.9    **Final Individual Settlement Amount.** "Final Individual Settlement Amount" shall mean each FLSA Collective Member's and/or NYLL Class Member's share of the Net Settlement Fund, as calculated pursuant to Section 3.5(A) of this Agreement.

1.10   **FLSA Collective; FLSA Collective Members.** "FLSA Collective" and "FLSA Collective Members" shall mean all persons employed as a dealer (including table game dealers, poker room dealers, and dual-rate dealers/floor supervisors) at Defendant's operation at any time from August 23, 2019 through January 4, 2023, who cash a check for this Final Individual Settlement Amount in the Litigation.

1.11   **FLSA Covered Period.** "FLSA Covered Period" shall mean the period from August 23, 2019 through January 4, 2023.

1.12   **Plaintiff.** "Plaintiff" shall mean Plaintiff David Potter.

1.13   **Litigation.** "Litigation" shall mean *Potter v. Tioga Downs Racetrack, LLC*, Case No. 22-cv-00869, pending in the United States District Court for the Northern District of New York.

1.14   **Mailing Date.** "Mailing Date" shall mean the day on which the Settlement Administrator first attempts to mail the Notice Form to the NYLL Class Members and FLSA Collective Members pursuant to Section 2.4(C) of this Agreement

1.15   **Net Settlement Fund.** "Net Settlement Fund" shall mean the remainder of the Settlement Fund after deductions for Court-approved attorneys' fees and costs as described in Section 3.2, Court-approved service payments to the Plaintiff as described in Section 3.3, Court-approved fees and costs to the Settlement Administrator as described in Section 3.4, and all employer-side taxes due in connection with the Final Individual Settlement Amounts.

1.16   **NYLL Class; NYLL Class Members.** "NYLL Class" shall mean all persons employed as a dealer (including table game dealers, poker room dealers, and dual-rate dealers/floor supervisors) at Defendant at any time from November 10, 2016 through January 4, 2023, except that any individual who timely submitted or submits a valid opt-out statement pursuant to Section 2.5 below shall not be included in the NYLL Class. A member of the NYLL Class is a "NYLL Class Member."

1.17   **NYLL Covered Period.** "NYLL Covered Period" shall mean the period from November 10, 2016 through January 4, 2023.

1.18 **Objection Deadline.** "Objection Deadline" shall mean the date that is sixty (60) calendar days after the Mailing Date, unless such day is a weekend or holiday, in which case, the Objection Deadline shall be the next business day.

1.19 **Opt-Out Deadline.** "Opt-Out Deadline" shall mean the date that is sixty (60) calendar days after the Mailing Date, unless such day is a weekend or holiday, in which case, the Opt-Out Deadline shall be the next business day.

1.20 **Order Granting Final Approval.** "Order Granting Final Approval" shall mean the order granting final approval to the terms and conditions of this Agreement, entered by the Court after the Fairness Hearing.

1.21 **Order Granting Preliminary Approval.** "Order Granting Preliminary Approval" shall mean the Order entered by the Court preliminarily approving, *inter alia*, the terms and conditions of this Agreement, preliminarily certifying the FLSA Collective and NYLL Class for settlement purposes only, the manner and timing of providing notice to the Class, and the time period for opt-outs and objections.

1.22 **Overtime Hour(s) Worked.** "Overtime Hour(s) Worked" shall mean any hour worked by NYLL Class Members or FLSA Collective Members in Departments 201000, 201100, 201200, 201300, 202000, or 202100 that is categorized as an overtime hour in Defendant's payroll system and was paid during the NYLL Covered Period.

1.23 **Potential FLSA Collective Members.** "Potential FLSA Collective Members" shall mean all persons employed as a dealer (including table game dealers, poker room dealers, and dual-rate dealers/floor supervisors) at Defendant's operation at any time from August 23, 2019 through January 4, 2023.

1.24 **Regular Hour(s) Worked.** "Regular Hour(s) Worked" shall mean any non-overtime hour worked by NYLL Class Members or FLSA Collective Members in Departments 201000, 201200, or 202000 and was paid during the NYLL Covered Period.

1.25 **Settlement Administrator.** "Settlement Administrator" shall mean CAC Services Group, LLC, which will provide notice to the NYLL Class and FLSA Collective and administer the settlement payments.

1.26 **Settlement Fund.** The "Settlement Fund" shall mean Eight Hundred Fifty Thousand Dollars and No Cents ($850,000.00).

1.27 **Settlement Payment.** "Settlement Payment" shall mean the sum of the aggregate of the Final Individual Settlement Amounts, Court-approved attorneys' fees and costs as described in Section 3.2, Court-approved service payments to the Plaintiff as described in Section 3.3, Court-approved fees and costs to the Settlement Administrator as described in Section 3.4, and all employer-side taxes due in connection with the Final Individual Settlement Amounts.

2.    **APPROVAL AND CLASS NOTICE**

2.1    **Retention of Settlement Administrator.**  Plaintiff shall retain the Settlement Administrator.   The Settlement Administrator shall be responsible for the settlement administration process and distributions of settlement payments as provided herein, as well as for making any mailings required under this Agreement. The Settlement Administrator will also maintain telephone support for any inquiries regarding the Settlement. The Parties agree to cooperate with the Settlement Administrator and take all reasonable steps to assist it in administering the Settlement.  Defendant's Counsel and Class/Collective Counsel have the right to make inquiries and receive any information from the Settlement Administrator related to the claims administration process, except that Class/Collective Counsel cannot request the social security numbers from the Class/Collective Data from the Settlement Administrator.  Plaintiff agrees to direct the Settlement Administrator to respond and provide any information requested by Class/Collective Counsel or Defendant's Counsel (except for the social security numbers from the Class/Collective Data). The Settlement Administrator's fees and costs shall be paid out of the Settlement Fund after Court approval and shall not exceed $7,000.

2.2    **Order Granting Preliminary Approval.**  Within ten (10) business days of execution of this Agreement by all Parties, or by any deadline set by the Court, solely for the purpose of concluding a settlement of this action, Plaintiff shall file with the Court a motion for an Order Granting Preliminary Approval, in the form of attached hereto as **Exhibit B**, preliminarily approving this Agreement, preliminarily certifying the NYLL Class and FLSA Collective for settlement purposes only, and approving a proposed Notice Form (in the form attached hereto as **Exhibit A**).  Defendants shall not oppose this motion, unless the motion seeks relief beyond the express terms of this Agreement or is otherwise inconsistent with this Agreement.

2.3    **Final Order and Judgment from the Court.**  Plaintiff shall submit to the Court a Motion for a Final Order and Judgment ("Final Approval Motion") no later than seven (7) calendar days before the Fairness Hearing.  The Fairness Hearing shall be held at the Court's convenience, but the Parties shall request that the hearing take place at least one hundred forty (140) calendar days after the Order Granting Preliminary Approval.  The Proposed Final Order and Judgment shall be in a form agreed upon by the Parties.  The Final Approval Motion will be provided to Defendant for review and comment at least five (5) business days prior to filing with the Court, and Plaintiff will accept Defendant's reasonable comments. Defendant may oppose the Final Approval Motion with respect to any comments that are not accepted by Plaintiffs or the extent the Final Approval Motion seeks relief beyond the express terms of this Agreement or is otherwise inconsistent with this Agreement.

**2.4    Notice to NYLL Class Members and Putative FLSA Collective Members.**

(A)    Within fifteen (15) business days after the Court issues the Order Granting Preliminary Approval, Defendant will provide the Settlement Administrator with the Class/Collective Data, in electronic form.  Plaintiff shall direct the Settlement Administrator not to share the social security numbers from the Class/Collective Data with Plaintiff, Class/Collective Counsel, or any third parties, except for governmental taxing agencies as needed to issue tax forms pursuant to the Agreement.

(B)    Plaintiff shall direct the Settlement Administrator to perform a preliminary calculation of the Final Individual Settlement Amounts within ten (10) business days after the Settlement Administrator receives the Class/Collective Data, based on the assumption that the Court approves the maximum permissible amounts in attorneys fees and costs, Settlement Administrator's expenses, and service award, and factoring in all employer-side taxes payable out of the Settlement Fund.

(C)    Within fourteen (14) calendar days after receiving the Class/Collective Data, Plaintiff shall direct the Settlement Administrator shall distribute the Notice Form (in the form attached hereto as **Exhibit A**) to each NYLL Class Member and Putative FLSA Collective Member.

(D)    Plaintiff shall direct the Settlement Administrator shall notify Class/Collective Counsel and Defendant's Counsel of the Mailing Date within three (3) calendar days after the first mailing of Notice Form pursuant to Section 2.4(C).

**2.5    NYLL Class Member Opt-Out.**

(A)    Any NYLL Class Member may request exclusion from the Class by "opting out" on or before the Opt-Out Deadline.  Any NYLL Class Member who chooses to opt out of the NYLL Class must mail a written, signed statement to the Settlement Administrator stating that he/she/they is/are opting out of the Settlement.  The statement must contain the name, address, and telephone number of the Class Member to be valid.  It must also contain the words "I elect to exclude myself from the settlement in *Potter v. Tioga Downs Racetrack*" in order to be valid.  To be effective, such statements must be submitted by the Opt-Out Deadline.  For opt-out statements submitted by mail, the postmark date shall be the means for determining whether it was timely submitted.  For opt-out statements submitted by electronic submission, the electronic time stamp reflecting the sent time or the Settlement Administratior's actual receipt of the statement, whichever is earlier, shall be the means for determining whether it was time submitted.  Plaintiff shall file all opt-out statements with the Court in the Litigation with the Final Approval Motion.

**2.6    Objections to Settlement.**

(A)    NYLL Class Members and/or FLSA Collective Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing.  To be effective, such objections must be submitted to the Settlement

Administrator by the Objection Deadline. The timeliness of objections shall be measured in the same manner as opt-out statements pursuant to Section 2.5(A).

(B)     An objector also has the right to appear at the Fairness Hearing either in person or through counsel hired by the objector. An objector who wishes to appear at the Fairness Hearing must state his/her/their intention to do so by the Objection Deadline. An objector may withdraw his/her/their objections at any time. No objector may appear at the Fairness Hearing unless he/she/they have filed a timely objection that complies with the procedures provided in Section 2.6(A). Any NYLL Class Member who has submitted a timely statement to opt out of the NYLL Class may not submit objections to the settlement.

(C)     Any Party may file written responses to any filed objections with the Court no later than seven (7) calendar days before the Fairness Hearing.

**2.7    Statement From Settlement Administrator**. Plaintiff shall direct the Settlement Administrator to provide Class/Collective Counsel and Defendant's Counsel with all objections and opt-out statements and a statement/spreadsheet that contains the following information no later than one hundred (100) calendar days after the Order Granting Preliminary Approval:

   a)   A summary of the total settlement payments for attorneys' fees, costs, service awards, Settlement Administrator's fees and costs, and Final Individual Settlement Amounts; and

   b)   The total number of objections and opt-out statements received by the Settlement Administrator.

**2.8    Effect of Failure to Grant Final Approval.** In the event the Court fails to issue an Order Granting Preliminary Approval or an Order Granting Final Approval, the Litigation will proceed as if no settlement had been attempted, and any preliminarily certified NYLL Class or FLSA Collective shall be immediately decertified.

**2.9    Estimated Settlement Calculations and Challenge Procedure.** The estimated Final Individual Settlement Amounts calculated pursuant to Section 2.4(B), and the basis therefore, shall be included in each Notice Form. Any NYLL Class Member and/or Putative FLSA Collective Member may challenge the calculation of his/her/their estimated Final Individual Settlement Amount. Such challenges must: (i) be in writing; (ii) state the full name of the NYLL Class Member/Putative FLSA Collective Member seeking the challenge; (iii) include a statement that the NYLL Class Member/Putative FLSA Collective Member is seeking to challenge his/her/their estimated Final Individual Settlement Amount set forth in the Notice Form; (iv) state the number of overtime and/or non-overtime hours the NYLL Class Member/Putative FLSA Collective Member believes he/she/they worked during the applicable time period(s); (v) include documentation to support the challenge; (vi) be signed by the NYLL Class Member/Putative FLSA Collective Member

seeking the challenge; and (vii) be mailed or emailed to the Settlement Administrator with a postmark date or electronic sent date on or before the expiration of the Notice Period. A NYLL Class Member/Putative FLSA Collective Member challenging his/her/their Final Individual Settlement Amount must produce documentary evidence to the Settlement Administrator for consideration and/or challenge. The Settlement Administrator will resolve the challenge with input from Plaintiff's Counsel and Defendant's Counsel and make a final and binding determination without hearing or right of appeal. The personnel records, including payroll and time records, of Defendant shall be considered by the Settlement Administrator as the presumptive best evidence of hours worked.

2.10    **Final Settlement Calculations.**    The Plaintiff shall direct the Settlement Administrator to calculate the Final Individual Settlement Amounts for each NYLL Class Member and Putative FLSA Collective Member based on the allocation formula in Section 3.5 and to provide the calculations to Class/Collective Counsel and Defendant's Counsel by e-mail within seven (7) calendar days after the Order Granting Final Approval.  Plaintiff and Defendant shall have seven (7) calendar days after receipt to challenge the calculations through written notice.  If Plaintiff or Defendant challenges the calculations, Defendant and Plaintiff shall have seven (7) calendar days to resolve the challenge. If Defendant and Plaintiff are unable to resolve a challenge, then they shall seek the assistance of the Court; no payments shall be made under this Agreement until such challenges are resolved through Court order or mutual written agreement of the Parties.  If no challenges are made by the deadline above, the Settlement Administrator's determinations regarding the Final Individual Settlement Amounts for each NYLL Class Member and Putative FLSA Collective Member shall be final, binding, and not subject to subsequent challenge by the Plaintiff, the NYLL Class Member, the Putative FLSA Collective Members, Class/Collective Counsel, or Defendant's Counsel.  Challenges raised pursuant to Section 2.9 may not be raised again pursuant to the procedure in this Section.

3.    **SETTLEMENT TERMS**

3.1    **Settlement Payment.**

(A)    The Settlement Payment shall only be used for payments referenced in Section 1.27; no other payments shall be made from the Settlement Payment.

(B)    Defendant shall deposit the Settlement Fund into the Escrow Account within fifteen (15) calendar days after the Effective Date of this Agreement.  Plaintiff shall direct the Settlement Administrator will distribute these funds within thirty (30) calendar days after the Effective Date.

(C)    The Settlement Administrator shall pay out the Settlement Fund as follows:

(i)    Pay Class/Collective Counsel for all fees, costs and expenses approved by the Court in its Order Granting Final Approval.

(ii) Pay Plaintiff for any Service Award approved by the Court in its Order Granting Final Approval.

(iii) Pay the Settlement Administrator for any expenses approved by the Court in its Order Granting Final Approval.

(iv) Pay the employer-side taxes required for the Final Individual Settlement Amounts to the appropriate governmental agencies.

(v) Distribute the Final Individual Settlement Amounts to NYLL Class Members and FLSA Collective Members.

**3.2 Settlement Amounts Payable as Attorneys' Fees and Costs.**

(A) Prior to the Fairness Hearing, Class/Collective Counsel shall petition the Court for reimbursement of reasonable litigation costs and expenses not to exceed Five Thousand Dollars and No Cents ($5,000) in costs from the Settlement Fund. In addition, Class/Collective Counsel shall petition the Court for no more than Two Hundred Eighty-Three Thousand Three Hundred Thirty-Three Dollars and Thirty-Three Cents ($283,333.33) from the Settlement Fund as an award of attorneys' fees. Defendant will not oppose such applications. Defendant shall have no additional liability for attorneys' fees and costs to Class/Collective Counsel, Plaintiff, the NYLL Class Members or the FLSA Collective Members.

(B) The outcome of any proceeding related to Class/Collective Counsel's application for attorneys' fees and costs shall not terminate this Agreement. The amount of any reduction by the Court of Class/Collective Counsel's application for costs/expenses or attorneys' fees shall become part of the Net Settlement Fund.

**3.3 Service Awards.** Prior to the Fairness Hearing, Plaintiff will apply to the Court to award up to a total of Ten Thousand Dollars and No Cents ($10,000.00) as a Service Award for Plaintiff for services rendered to the NYLL Class and FLSA Collective. Any Service Award approved by the Court shall be paid in addition to the Plaintiff's Final Individual Settlement Amount. Any approved Service Award shall be paid out of the Settlement Fund. The outcome of the Court's ruling on the application for Service Award shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval. The amount of any reduction by the Court of Plaintiff's application for a Service Award shall become part of the Net Settlement Fund.

**3.4 Settlement Administrator's Fees and Costs**. Prior to the Fairness Hearing, Plaintiff will apply to the Court to award an amount up to Seven Thousand Dollars and No Cents ($7,000.00) to the Settlement Administrator to cover its expenses. Any amount approved by the Court shall be paid out of the Settlement Fund. The outcome of the Court's ruling on this application shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval. The amount of any reduction by the Court of the Settlement Administrator's costs and fees shall become part of the Net Settlement Fund.

DocuSign Envelope ID: 1E30CD7C-E319-112E-AE2E-6EBB3AE50FE7

**3.5     Distribution to NYLL Class Members and FLSA Collective Members.**

(A)     The Net Settlement Fund shall be allocated as follows:

     (i)        Each NYLL Class Member will receive the following points:

            a)  0.75 points for every Regular Hour Worked in a workweek paid during the period from June 30, 2020 to January 4, 2023; and

            b)  1 point for every Overtime Hour Worked in a workweek paid during the period from November 10, 2016 through August 22, 2019.

     (ii)      Each Putative FLSA Collective Member will receive the following points:

            a)  1 points for every Overtime Hour Worked in a workweek paid during the period from  August 23, 2019 through January 4, 2023.

     (iii)     The total number of points shall be aggregated for all NYLL Class Members and Putative FLSA Collective Members.

     (iv)    Each NYLL Class Members and/or Putative FLSA Collective Member's individual points shall be aggregated.

     (v)     Each NYLL Class Members and/or Putative FLSA Collective Member's total individual points shall be divided by the total points for all NYLL Class Members and FLSA Collective Members to determine each individual's allocation percentage.

     (vi)    Each NYLL Class Member and/or Putative FLSA Collective Member shall be assigned an amount that equals that individual's allocation percentage multiplied times the Net Settlement Fund.

     (vii)    The following adjustments shall be made to determine each NYLL Class Member and Putative FLSA Collective Member's Final Individual Settlement Amount:

            a)  To the extent any individual is assigned an amount pursuant to Section 3.5(A)(vi) that is less than Fifty Dollars and No Cents ($50.00), their assigned amount shall be increased to Fifty Dollars and No Cents ($50.00).

            b)  The amounts assigned to the NYLL Class Members and Putative FLSA Collctive Members shall, if necessary, be proportionately reduced to ensure that the Final Individual

DocuSign Envelope ID: 1E30CD7C-E319-412E-AE3E-6EBB3AE50FE7

Settlement Amounts in the aggregate do not exceed the Net Settlement Fund. If necessary, the Settlement Administrator may round the Final Individual Settlement Amount for one or more NYLL Class Members and/or Putative FLSA Collective Members down by up to One Dollar and No Cents ($1.00) to ensure that the Final Individual Settlement Amounts, in the aggregate, do not exceed the Net Settlement Fund. However, in no event shall any NYLL Class Member or Putative FLSA Collective Member receive a payment less than Fifty Dollars and No Cents ($50.00).

(B)     The Settlement Administrator will send one reminder postcard to any settlement check recipients who did not negotiate their settlement checks within 60 days after distribution by the Settlement Administrator, reminding such recipients to cash their checks.

(C)     Plaintiff shall direct the Settlement Administrator to include the following language on the back of each check to NYLL Class Members and Putative FLSA Collective Members: "By accepting this payment, I consent to join the FLSA collective in the Potter v. Tioga Downs Racetrack LLC lawsuit and waive any right to bring suit for back wages under the Fair Labor Standards Act and all other applicable state and local laws for overtime wages and other other wage and hour claims through the date on which I endorse this check. I agree that by accepting this payment, I have settled by claims for any unpaid wages, liquidated damages, interest and associated fees and penalties through January 4, 2023." A Putative FLSA Collective Member shall be deemed to have joined the FLSA Collective upon their signing and cashing of any checks for their Final Individual Settlement Amount.

(D)     Any checks issued under this Agreement that are not cashed within one hundred and eighty (180) calendar days shall be void. The Plaintiff shall direct the Settlement Administrator to remit all such funds to the New York State Comptroller.

**3.6     Taxability of Settlement Payments.**

(A)     For tax purposes, the payments to NYLL Class Members and FLSA Collective Members pursuant to Section 3.5 will be allocated as follows:

(i)     50% in consideration for time worked as back-wage payments and/or wage income subject to W-2 reporting. Plaintiff shall direct the Settlement Administrator to make all deductions and withholdings required by law, including federal, state and local income tax withholding and the employee's share of any employment taxes, such as FICA, and to report such payments on Forms W-2 as required by law.

(ii)      50% in consideration for liquidated damages and interest as non-wage payments. Plaintiff shall direct the Settlement Administrator to report such payments on Forms 1099 to the extent required by law.

(B)      Payments of attorneys' fees and costs, Settlement Administrator's expenses, and any Service Award payment shall be made without withholding. Plaintiff shall direct the Settlement Administrator to report such payments to governmental taxing authorities to the extent required by law.

(C)      Each individual NYLL Class Member and FLSA Collective Member will be solely responsible for all of his/her/their taxes, interest, and penalties due with respect to any payment received by him/her/them pursuant to this Agreement (other than taxes withheld by the Settlement Administrator pursuant to Section 3.6(A)). Plaintiff, on behalf of the NYLL Class, FLSA Collective and himself, acknowledges and agrees that he has not relied upon any advice from Defendant or Class/Collective Counsel as to the taxability of the payments received pursuant to this Agreement.

(F)      Defendant and the Settlement Administrator shall exchange such information as is necessary and legally permissible for the Settlement Administrator to make proper tax withholdings and comply with tax reporting obligations as described in this Section.

(G)      All payments to NYLL Class Members and FLSA Collective Members made pursuant to this Agreement shall be deemed to be paid to such individuals solely in the year in which such payments actually are received by those individuals.

3.7    **Release.**

(A)      **Release of NYLL Class Claims.** Upon the Order Granting Final Approval, and except as to such rights or claims as may be created by this Agreement, each NYLL Class Member (including Plaintiff), on his/her/their behalf, and on behalf of his/her/their respective current, former and future heirs, spouses, executors, administrators, and agents, fully releases and discharges Defendant, Defendant's present and former parent companies, subsidiaries, related or affiliated companies, shareholders, officers, directors, managerial and supervisory employees, members, employees who meet the definition of an employer under the New York Labor Law with regard to one or more NYLL Class Members, co-joint ventures, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, successors and assigns, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity which could be jointly liable with any of them ("Releasees"), from any claims related to the conduct alleged in the Litigation under the New York Labor Law (including the Wage Theft Prevention Act), and any applicable related rule, regulation or Wage Order, whether known or unknown, through January 4, 2023, including but not limited to state law claims for overtime, minimum wage, unpaid wages, improper use of the tip credit,

failure to provide accurate wage statements, failure to provide wage notices, interest, liquidated damages, and attorneys' fees and costs related to such claims.

(B)    **Release of FLSA Claims.**  Upon the Order Granting Final Approval, each FLSA Collective Member by signing and cashing any check for the Final Individual Settlement Payments forever and fully releases the Releasees from all Fair Labor Standard Act claims related to the conduct alleged in the Litigation, whether known or unknown, through January 4, 2023, including, but not limited to, claims for overtime, unpaid wages, liquidated damages, interest, and attorneys' fees and costs related to such claims.

(C)    **Named Plaintiff's General Release.**  Named Plaintiff David Potter and all persons purporting to act on Plaintiff's behalf or purporting to assert a claim under or through Plaintiff, hereby do and shall be deemed to have fully, finally, and forever released, settled, compromised, relinquished, and discharged any and all of the Releasees from any and all claims, known or unknown, asserted and unasserted, that he has or may have had against any or all Releasees from the beginning of time through the date Plaintiff executes this Agreement.  Such claims include, but are not limited to the Released NYLL Class Claims and FLSA Claims; breaches of contract, whether written, oral or implied; violations of any public policy; tort claims, including but not limited to intentional infliction of emotional distress and negligent infliction of emotional distress, defamation, misrepresentation, and fraud; retaliation claims; common law claims; any other claims for damages, costs, fees, or other expenses, including attorneys' fees; and any violations of the following statutes, laws, and regulations and amendments thereto:  Title VII of the Civil Rights Act of 1964; the Civil Rights Act of 1991; Sections 1981 through 1988 of Title 42 of the United States Code; the Age Discrimination Act; the Americans with Disabilities Act of 1990; the Employment Retirement Income Security Act of 1974; the Occupational Safety and Health Act; the Sarbanes-Oxley Act of 2002; the Family and Medical Leave Act of 1993; the Fair Labor Standards Act; the New York Human Rights Law; and any other federal, state, or local civil employment law, statute, regulation, or ordinance capable of being released by Plaintiff, excluding any claims that cannot be released as a matter of law.

(D)    **Release of Fees and Costs for Settled Matters**.  Class/Collective Counsel and Plaintiff, on behalf of Plaintiff, the NYLL Class and the FLSA Collective, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against Defendant for attorneys' fees or costs associated with Class/Collective Counsel's representation of Plaintiff, the NYLL Class, and the FLSA Collective.  Class/Collective Counsel further understands and agrees that any fee payments approved by the Court will be the full, final, and complete payment of all attorneys' fees and costs associated with Class/Collective Counsel's representation of these individuals in this Litigation.  Plaintiffs and Class/Collective Counsel warrant and represent that they are not aware of any liens and/or pending legal claims applicable to the Settlement Fund.   Plaintiff agrees to defend, indemnify and hold harmless the Defendant against any lien, claim or action asserted against or related to his portion of the Settlement Amount.  Plaintiff also

agrees that he will be solely responsible to satisfy any liens or claims asserted against the Defendant as against or related to his portion of the Settlement Amount.

(E)   **Non-Admission of Liability.**  By entering into this Agreement, Defendant in no way admits any violation of law or any liability whatsoever to Plaintiff, the NYLL Class and/or the FLSA Collective, individually or collectively, all such liability being expressly denied.  Rather, Defendant enters into this Agreement to avoid further protracted litigation and to resolve and settle all claims released pursuant to Section 3.7.  Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendant or of the truth of any of the factual allegations in any and all Complaints filed in the Lawsuit; and (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendant in any civil, criminal, administrative, or arbitral proceeding.  The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

**3.8**   **Option to Void.**

(A)   Within thirty (30) calendar days after the Settlement Administrator provides Class/Collective Counsel and Defendant's Counsel the information set forth in Section 2.7, Defendant has the option to void this Agreement if more than thirty-nine (39) Class Members opt out of the Settlement.  If Defendant wishes to exercise its right provided for herein, Defendant shall notify Class/Collective Counsel in writing of its intent to exercise its option.

**3.9**   **Miscellaneous.**

(A)   **Cooperation Between the Parties; Further Acts.**  The Parties shall cooperate with each other and shall use reasonable efforts to obtain the Court's approval of this Agreement and all of its terms.  Each of the Parties, upon the request of any other Party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

(B)   **Entire Agreement.**  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

(C)   **Binding Effect.**  This Agreement shall be binding upon the Parties, the NYLL Class Members, the FLSA Collective Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys, and assigns.

(D)    **Arms' Length Transaction; Materiality of Terms.**  The Parties have negotiated the principal terms and conditions of this Agreement at arms' length, during a mediation session before Krista Gottlieb, Esq.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

(E)    **Captions.**  The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

(F)    **Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each Party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any Party by virtue of draftsmanship.

(G)    **Governing Law.**  This Agreement shall in all respects be interpreted, enforced, and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

(H)    **Continuing Jurisdiction.**  The Parties shall request that the Court retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.  The Court shall not have jurisdiction or authority to increase Defendant's payment obligations hereunder.

(I)    **Waivers, etc. to Be in Writing.**  No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification, or amendment and approved by the Court.  Any failure by any Party to insist upon the strict performance by the other Party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

(J)    **When Agreement Becomes Effective; Counterparts.**  Except for provisions of this Agreement requiring any Party to act or seek Court action prior to Court approval, which provisions are intended to be binding on the Parties upon mutual execution hereof, this Agreement shall become fully effective upon the Court's entering an Order Granting Final Approval.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if Plaintiffs and Defendant had signed the same instrument.

(K)     **Facsimile and Email Signatures.**  In the event that any signature is delivered by facsimile transmission or by email delivery of a ".pdf" format data file, such signature shall create a valid and binding obligation for the executing party (or the party on whose behalf such signature is executed) with the same force and effect as if such facsimile or ".pdf" signature page were an original signature page.

**CLASS/COLLECTIVE COUNSEL:**

DATED: ___6/16/2023___, 2023

By: _____

Matthew D. Carlson
LAW OFFICE OF MATTHEW D. CARLSON
3959 N. Buffalo Road, Suite20
Orchard Park, New York 14127
(716) 242-1234
*Attorneys for Plaintiffs*

**PLAINTIFF:**

DATED: ___6/16/2023___, 2023

By:    **David Potter**

**DEFENDANT:**

DATED: _____, 2023

By: _____

On behalf of Defendant Tioga Downs Racetrack LLC

(K)    **Facsimile and Email Signatures.**  In the event that any signature is delivered by facsimile transmission or by email delivery of a ".pdf" format data file, such signature shall create a valid and binding obligation for the executing party (or the party on whose behalf such signature is executed) with the same force and effect as if such facsimile or ".pdf" signature page were an original signature page.

**CLASS/COLLECTIVE COUNSEL:**

DATED: _____, 2023

By:_____
Matthew D. Carlson
LAW OFFICE OF MATTHEW D. CARLSON
3959 N. Buffalo Road, Suite20
Orchard Park, New York 14127
(716) 242-1234
*Attorneys for Plaintiffs*

**PLAINTIFF:**

DATED: _____, 2023

By:    _____
       **David Potter**

**DEFENDANT:**

DATED: 6/20, 2023

By:    Charles Otto

On behalf of Defendant Tioga Downs Racetrack LLC

16

# EXHIBIT A

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF NEW YORK

### BINGHAMTON DIVISION

|  |  |  |
|---|---|---|
| DAVID POTTER, on behalf of himself and others similarly situated, | : : : | Civil Action No.: |
| Plaintiff, | : : | 3:22-cv-00869-TJM-ML |
| v. | : : | **NOTICE OF CLASS AND** |
| TIOGA DOWNS RACETRACK, LLC, | : : | **COLLECTIVE ACTION** **SETTLEMENT** |
| Defendant. | : : : : : : : | |

<<FIRST AND LAST NAME>>
<<ADDRESS>>
<<CITY AND ZIP CODE>>

**To:** All persons who are or were employed by Defendant Tioga Downs Racetrack, LLC, as a dealer (including as a table games dealer, poker room dealer, and dual-rate dealer) at any time from November 10, 2016 through January 4, 2023.

PLEASE READ THIS NOTICE CAREFULLY.  YOUR RIGHTS MAY BE AFFECTED.

This Notice is Court Approved. This is not a solicitation from an attorney. **YOU DO NOT NEED TO DO ANYTHING TO RECEIVE A PAYMENT FROM THIS SETTLEMENT.**

## 1.    WHY DID I GET THIS NOTICE?

You received this Notice because a proposed settlement (the "Settlement") has been reached in the class and collective action entitled *David Potter, on behalf of himself and all others similarly situated, vs. Tioga Downs Racetrack, LLC, et al.* which is pending in the United States District Court for the Northern District of New York as Case No. 3:22-cv-00869-TJM-ML (hereinafter referred to as the "Action").

The Notice explains the nature of the Action, the general terms of the proposed Settlement,

1

and your legal rights and obligations.

**2.    WHAT IS THE ACTION ABOUT?**

This Action alleges that Defendant Tioga Downs Racetrack, LLC (referred to as "Tioga Downs" or "Defendant") violated applicable provisions of the federal Fair Labor Standards Act and New York Labor Law with respect to how it calculated dealers' overtime rates of pay between November 10, 2016 and January 4, 2023, and how it applied tip credits to dealers' pay between June 30, 2020 and January 4, 2023.

Tioga Downs strongly denies all allegations of wrongdoing and maintains that it complied at all times with applicable laws, rules, and regulations at issue but has entered into this settlement to avoid the expense of further litigation.

The Parties engaged in contested litigation, including discovery of thousands of pages of documents concerning dealers' compensation, including time and payroll data, and thereafter participated in extensive settlement negotiations, including a private mediation with an experienced and neutral mediator. Those negotiations led to an agreement to settle the case, which was memorialized in a formal agreement.

The Court has not ruled on the merits of the lawsuit.

**3.    WHAT IS A SETTLEMENT COLLECTIVE?**

In a collective action lawsuit brought under the federal Fair Labor Standards Act ("FLSA"), one or more persons sue on behalf of other people who have similar claims, and those similarly situated people consent to join the case. Those who do join the case are part of a "collective." A "settlement collective" is a collective created for purpose of resolving claims on behalf of similarly situated people in one proceeding.

**4.    WHO IS INCLUDED IN THE SETTLEMENT COLLECTIVE?**

The identities of the members of the proposed Settlement Collective have been ascertained from Tioga Downs' records. Tioga Downs' records show that you are eligible to participate in the Settlement Collective and will receive payment for FLSA claims because you worked as a dealer for Tioga Downs during the time period from August 23, 2019, to January 4, 2023. **If you worked as a dealer for Tioga Downs during this time period, you will join the Settlement Collective and be bound by a judgment concerning the Settlement Collective in the Action by cashing your check.**

**5.    WHAT IS A SETTLEMENT CLASS?**

In a class action lawsuit brought under state law, one or more persons sue on behalf of other people who have similar claims, and such similarly situated people do not have to consent to join a class. Like a "settlement collective," which applies to claims under federal law, a "settlement class" is a class created for purpose of resolving state law claims on behalf of similarly situated

DocuSign Envelope ID: 1E30CD7C-E319-41E5-AE2E-6EBB3AE50FE7

people in one proceeding. **Unless you exclude yourself from the settlement, you will be bound by a judgment concerning the Settlement Class in the Action, and you will receive payment for and release the state law claims asserted in the case, regardless of whether you cash your check.**

**6.      WHO IS INCLUDED IN THE SETTLEMENT CLASS?**

The identities of the members of the Settlement Class have been ascertained from Tioga Downs' records. Tioga Downs' records show that you are included in the Settlement Class because you worked as a dealer for Tioga Downs during the time period from November 10, 2016, to January 4, 2023.

**5.      WHAT ARE THE BENEFITS OF SETTLEMENT TO DEALERS?**

Plaintiff, on one hand, and Tioga Downs, on the other hand, disagree about many issues in this Action, including but not limited to: (1) whether the case is appropriate for treatment as a class or collective action; (2) whether any dealers are owed any wages or penalties; and (3) the amount of wages or penalties owed, if any. Tioga Downs raised numerous defenses to the claims asserted, and those defenses could eliminate any liability completely or reduce or eliminate damages or penalties owed to dealers. Accordingly, there were significant risks to dealers associated with continuing the lawsuit and significant benefits to settling the lawsuit before trial. Having considered the benefits and risks associated with further litigation, counsel for Plaintiff ("Class Counsel") determined that settlement of the case under the terms described in this Notice is a fair and reasonable compromise that is in the best interests of all of the dealers in the Class and Collective.

**6.      WHAT ARE THE TERMS OF THE SETTLEMENT?**

Tioga Downs has agreed to pay a total of $850,000 to settle all claims related to the conduct alleged in the Action. From this amount, the Court may approve settlement administration costs estimated to be no greater than $7,000, attorneys' fees for Class Counsel estimated not to exceed $283,333.33, reasonable costs/expenses for Class Counsel not to exceed $5,000, a service award to Plaintiff as the Class Representative not to exceed $10,000, and payroll tax payments not to exceed $_____.

From the remaining funds, dealers will be compensated on a pro rata basis based on a "points" formula. Pursuant to this formula, you will receive one point for every overtime hour worked as a dealer (including hours worked in a supervisory or non-tipped dealer role) from November 10, 2016 through January 4, 2023; and 0.75 points for every regular (non-overtime) hour you worked as a dealer (excluding hours worked in a supervisory or non-tipped dealer role) from June 30, 2020 to January 4, 2023. This point system has been carefully designed to compensate dealers for alleged federal and state law overtime claims arising from overtime hours worked from November 10, 2016 through January 4, 2023, and, for dealers who worked from June 30, 2020 to January 4, 2023, for state law minimum wage claims arising from alleged improper application of New York's tip credit regulations. Fifty percent of your settlement amount will be considered wages and will be reported on an IRS Form W-2, and 50% of your settlement amount

will be considered liquidated damages and interest, and will be reported on an IRS Form 1099, if required.

Based on Defendant's records, the Settlement Administrator calculates that you worked [  ] non-overtime hours as a dealer from June 30, 2020 to January 4, 2023; [  ] overtime hours as a dealer from November 10, 2016 through August 22, 2019; and [  ] overtime hours as a dealer from August 23, 2019 through January 4, 2023. Based on these records, the Settlement Administrator calculates that your estimated settlement amount will be approximately [$  ].

If you wish to challenge the Settlement Administrator's calculations, you must mail or email your challenge to the Settlement Administrator at the contact information listed below. Such challenges must: (i) be in writing; (ii) state your full name; (iii) include a statement that you are seeking to challenge your estimated settlement amount; (iv) state the number of overtime and/or non-overtime hours the you believe you worked during the applicable time period(s); (v) include documentation to support the challenge; (vi) be signed; and (vii) mailed or emailed to the Settlement Administrator with a postmark date on or electronic sent date or before [      ]. You *must* produce documentary evidence to the Settlement Administrator for consideration and/or challenge. The Settlement Administrator will resolve the challenge with input from Plaintiff's Counsel and Defendant's Counsel and make a final and binding determination without hearing or right of appeal. The personnel records, including payroll and time records, of Defendant shall be considered by the Settlement Administrator as the presumptive best evidence of hours worked. The Settlement Administrator has final authority to resolve all challenges.

You can ask the Settlement Administrator to tell you your final payment amount seven days after the Court grants final approval to the settlement.

## 8.    WHAT DO I NEED TO DO TO RECEIVE A SETTLEMENT PAYMENT?

**To receive your portion of the settlement, you do not need to do anything**. You will be mailed your payment approximately 65 days after the Court approves the settlement (following the Final Approval Hearing on [Date of Final Approval Hearing]), if no appeals are filed.

Upon receipt of your settlement check, it will be your responsibility to cash the checks before the expiration date of the checks (180 days after mailing). **You will not be retaliated against for cashing your settlement check**. Any checks not cashed within 180 days after mailing will be transferred by the Settlement Administrator to the New York State Comptroller.

## 9.    HOW DOES THE SETTLEMENT AFFECT MY RIGHTS?

If the Court gives final approval to the Settlement, you will release all state law claims related to the conduct alleged in the case through January 4, 2023, regardless of whether you cash your check. If the Court gives final approval to the Settlement, you will also release all federal law claims related to the conduct alleged in the case through January 4, 2023 if you cash your check.

**10.      WHAT IF I DON'T WANT TO PARTICIPATE IN THIS SETTLEMENT?**

If you do not want to receive a payment for and release your claims related to the conduct alleged in the case, you may exclude yourself ("opt out") by sending written notice of your intention to opt out to the Settlement Administrator at the address listed below. The opt-out request must be in writing and include (i) your full name, address and phone number; (ii) the statement "I elect to exclude myself from the settlement in *Potter v. Tioga Downs Racetrack*"; and (iii) your signature. ***Any opt-out request must be postmarked no later than*** _____, **or if submitted by electronically, must be received by the Settlement Administrator by** _____.

If you opt out of the settlement, you will not receive a check, and will therefore not receive payment for or release your state law claims or FLSA claims.

Should you choose to opt-out and therefore not receive or cash a check, the money that you would have otherwise received will be distributed amongst eligible dealers who do not opt-out.

**11.      WHAT IF I WANT TO OBJECT TO THE SETTLEMENT?**

If you believe the settlement is unfair, you may object to the settlement by filing a written objection. You can't ask the Court to order a larger settlement; the Court can only approve or deny the Settlement. If the Court decides to not approve the Settlement, no settlement payments will be sent out and the lawsuit will continue.

All objections and supporting papers must (a) clearly identify the case and number (*Potter v. Tioga Downs Racetrack, LLC*, Case No. 3:22-cv-00869-TJM-ML), (b) be mailed or emailed to the Settlement Administrator, and (c) be filed or postmarked on or before _____, or if submitted electronically, must be received by the Settlement Administrator by _____.

If you submit a written objection, you may also assert it at the Fairness Hearing. You may hire a separate attorney to represent you at the Fairness Hearing at your own expense.

**12.      DO I HAVE A LAWYER IN THIS CASE?**

Yes.  The Court has ordered that the interests of Plaintiff and the Settlement Collective and Settlement Class are represented by counsel for Plaintiff as follows:

MATTHEW D. CARLSON, Bar No. 5802681
mdcarlson@mdcarlsonlaw.com
LAW OFFICE OF MATTHEW D. CARLSON
3959 N. Buffalo Road, #29
Orchard Park, NY 14127
Telephone: (716) 242-1234

You will not be separately charged for this attorney. If you want to be represented by your own lawyer, you may hire one at your own expense.

**13.   WHAT IS THE FINAL APPROVAL HEARING?**

The Court will hold a hearing to decide whether to give final approval to the Settlement. The purpose of the Final Approval Hearing will be for the Court to determine whether the Settlement should be approved as fair, reasonable, adequate; to consider the award of attorneys' fees and expenses to Class Counsel; the award of fees and expenses to the Settlement Administrator; and to consider the request for a service payment to Plaintiff.

**14.   WHEN AND WHERE IS THE FINAL APPROVAL HEARING?**

The Court will hold the Final Approval Hearing on [insert date] at [insert time] a.m., in the United States Courthouse and Federal Building, which is located at 15 Henry Street, Binghamton, NY 13901.

The Final Approval Hearing may be continued without further notice to you.  **It is not necessary for you to appear at the Final Approval Hearing**.  However, you have the right to attend the Final Approval Hearing, to be heard, and to be represented by your own counsel at your own expense.

**15.   HOW DO I GET MORE INFORMATION?**

This Notice summarizes the proposed settlement. **IF YOU NEED MORE INFORMATION OR HAVE ANY QUESTIONS, you may contact the Settlement Administrator at the address, email address, and/or telephone number listed below.**

**CAC Services Group, LLC**
**6420 Flying Cloud Dr Ste 101**
**Eden Prairie, MN 55344**
**info@cacsg.com**
**(866) 602-2260**

**16.   WHAT IF MY INFORMATION CHANGES?**

It is your responsibility to keep a current address and telephone number on file with the Settlement Administrator, to ensure receipt of your payment(s) and applicable tax forms if the Settlement is given final approval by the Court.  If you change your mailing address, you should promptly contact the Settlement Administrator and provide the Settlement Administrator your new address and contact information.

**DO NOT ADDRESS ANY QUESTIONS ABOUT THE SETTLEMENT OR THE LITIGATION TO THE CLERK OF THE COURT OR THE JUDGE**

DocuSign Envelope ID: 1E30CD7C-E319-412E-AE3E-6EBB3AE50FE7

# EXHIBIT B

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF NEW YORK

# BINGHAMTON DIVISION

|  |  |  |
|---|---|---|
| DAVID POTTER, on behalf of himself and others similarly situated, | : : : : | Civil Action No.: 3:22-cv-00869-TJM-ML |
| Plaintiff, | : | |
| v. | : : | |
| TIOGA DOWNS RACETRACK, LLC, | : : | |
| Defendant. | : : : | |

## [PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT

Having considered Plaintiff's Unopposed Motion for Preliminary Approval of Class and Collective Action Settlement, it is hereby ordered as follows:

1. Capitalized terms not otherwise defined in this Order shall have the definitions assigned to them in the Settlement Agreement.

2. The Court preliminarily approves the Settlement Agreement and all terms thereof and finds that the Settlement Agreement and all terms thereof are preliminarily fair, adequate, and reasonable.

3. For purposes of effectuating the Settlement Agreement only, the Court certifies the NYLL Class pursuant to Federal Rule of Civil Procedure 23, and certifies the FLSA Collective pursuant the Fair Labor Standards Act.

4. The Court appoints David Potter as representative of the NYLL Class and FLSA Collective.

1

5.  The Court appoints Law Office of Matthew D. Carlson as Class/Collective Counsel.

6.  The Court approves the Notice Form and notice plan (including the process of opting out and objecting to the settlement) pertaining thereto as set forth in Settlement Agreement.

7.  The Court appoints CAC Services Group, LLC as Settlement Administrator. The Court directs the parties and the Settlement Administrator to proceed in accordance with the terms of the Settlement Agreement.

8.  Within fifteen (15) business days after this Order, Defendant will provide the Settlement Administrator with the Class/Collective Data, in electronic form, including the names, last known mailing addresses, and social security numbers for each NYLL Class Member and each Potential FLSA Collective Member.

9.  The Court schedules a Fairness Hearing regarding final approval of the Settlement Agreement, Class Counsel's request for attorneys' fees and costs, the Settlement Administrator's fees and costs, and the service award to the named Plaintiff for _____, 2023, at _____ (*at least 140 calendar days after the date of this Order)*. The date and time of the Fairness Hearing shall be set forth in the Class Notice, but the Fairness Hearing shall be subject to adjournment by the Court without further notice to the Class Members other than that which may be posted by the Court.

10. The Notice Form is the only notice required and constitutes the best notice practicable under the circumstances, and such Notice Form constitutes valid, due and sufficient notice to the Class Members, complying fully with the requirements of due process and applicable state and federal law, including the Federal Rules of Civil Procedure, CPLR § 904, the United States Constitution, and any other applicable law.

11. The Notice Form shall be sent by the Settlement Administrator to all NYLL Class and Putative FLSA Collective Members for whom it has mailing addresses via First Class United States Mail, in accordance with the terms of the Settlement Agreement.

12. All other current deadlines and hearings are hereby removed from the calendar.

13. If the Settlement Agreement does not receive final Court approval, the Parties will be returned to their respective positions nunc pro tunc as those positions existed immediately prior to the execution of the Settlement Agreement. The NYLL Class and FLSA Collective shall be decertified. This Order will become null and void, and shall not be considered in evidence or on the issue of class or collective certification, and Defendant shall retain all rights to oppose class and collective certification in any subsequent proceeding.

BY THE COURT:

_____

Hon. Thomas J. McAvoy
District Judge